JAMES P. FARRELL *vs.* BENJAMIN L. LOVETT *et al.*

Penobscot. Decided June 29, 1878.

*Promissory notes.*

The holder of negotiable paper, taking it for good consideration in the usual course of business without knowledge of facts impeaching its validity, holds it by a good title.

It is not enough to defeat his recovery to show that he took it under circumstances that might tend to excite suspicion.

ON REPORT.

ASSUMPSIT on this note.

"Chester, March 25th, 1876. Five months after date, I, or we, promise to pay James Lawler, or order, one hundred and fifty dollars, for value received, negotiable and payable at Eastern Ex. Company, Lincoln, Me., without defalcation or discount, with 6 per cent interest from date until paid. (Signed) B. L. Lovett. Luther L. Lovett. Witness—G. Stetson. Post Office, Lincoln, county Penobscot."

Indorsed, James Lawler, James P. Farrell.

On the back of the note was printed this:

"I own—— acres of land in my own name in the town of—— county of—— and state of—— which is worth at a fair valuation $—— It is not encumbered by mortgage or otherwise, except the amount of $——, and the title is perfect in me in all respects. I have stock and personal property to the amount of $—— over and above my debts and liabilities, not exempt, and subject to levy and execution, stated and signed at the time the within note

was made and for the purpose of procuring the credit now obtained." There was also a stamp showing it had passed through the Schoharie Co. National Bank.

The defense was fraud in the inception of the note. The defendant testified that he gave the note for $150 to Lawler, a peddler, for goods worth $50; that the package contained two shawls, five dresses and five pieces broadcloth, which he called woolen goods, cut into suits; that he said they were English goods manufactured from the best material; that there was a great failure in England; that these goods were brought from there and purchased in New York by Mr. Farrell; that he was Farrell's agent; that the best shawl was Paisley and was worth $75; the other $18; he refused to give a bill of the prices; said that he was ordered not to sell less than $150 in one sale. The plaintiff judged the Paisley shawl worth about $8; had two suits made up for self and son; they were worn out in six weeks.

George M. Granger, the plaintiff's book-keeper, testified that the plaintiff was an importer of cloths, shawls and silks, etc., in New York; that he had dealings with some fifteen peddlers all over the United States; some of the notes he had printed for and charged to them; he had sold goods to Lawler and taken $20,000 of these notes; his sales were a million dollars annually; that the peddlers bought goods in pieces and had them cut up into suits in the store; that Paisley shawls cost all the way from $3.50 to $500; that parties sometimes found fault with the measure or quality of the goods, but never set up any case of fraud before.

*F. A. Wilson & C. F. Woodard* with *C. P. Brown & A. L. Simpson*, for the plaintiff.

*D. F. Davis*, with whom were *G. P. Sewall & J. F. Robinson*, for the defendants.

APPLETON, C. J. This is an action upon a promissory note of the defendants, payable to James Lawler or order in five months from date, and indorsed to the plaintiff before maturity, for value.

The defense is that Lawler, to whom it was payable, obtained it through fraud. The note was given for cloths and shawls sold

by him to the defendant Lovett. The goods were spread out by the seller for examination, and examined by the purchaser. The alleged fraudulent representations were that the goods "were English goods, manufactured from the best material; that there was a great failure in England, and that these goods were brought from England and purchased in New York by Mr. Farrell, and that he was agent for him," and that the shawls were Paisley shawls.

None of these statements, even if untrue, would form the basis of an action for deceit, or a defense resting on that ground, unless possibly it be the statement that the goods were manufactured from the best materials. Whether there had been a great failure in England, or Farrell had purchased the goods at a great advantage, were not such representations as, if false, would make the seller liable. *Bishop* v. *Small*, 63 Maine, 12. As to the quality of the goods, whether of the best material or not, the purchaser had ample opportunity to and did examine the goods purchased. Now though the defendant was deceived by the statements of Lawler as to the character and value of the goods sold, "yet," observes Morton, J., in *Brown* v. *Leach*, 107 Mass. 364, "the defendant could not maintain an action of deceit, if the goods were open to his observation, and he could by the use of ordinary diligence and prudence ascertain their quality. He should use reasonable diligence to ascertain their quality. The same principle applies when the purchaser seeks to avail himself of deceit in the defense of a suit for the price of the goods or in reduction of damages." To the same effect is the case of *Mooney* v. *Miller*, 102 Mass. 217.

But it is not important to discuss the relations between Lawler and the defendant, inasmuch as the evidence introduced in the defense fully establishes the fact that the plaintiff took the note before its maturity, for a good consideration, in the usual course of business, and ignorant of any fraud on the part of the indorser, if fraud there was.

The proof was, that the plaintiff was a merchant in extensive business in New York; that Lawler was a peddler who made large purchases of him; that his purchases were from one to five

thousand dollars; that the terms were "cash less five per cent discount thirty days;" that Lawler was in the habit of indorsing notes taken by him in payment, or part payment, of his indebtedness, at a discount of ten or fifteen dollars, dependent upon the size of the note and its time of payment; that the note in suit was thus received before maturity and passed to Lawler's credit; that the plaintiff had previously taken notes to the amount of twenty thousand dollars from him; that the defense of fraud had never before been interposed; that Lawler was no agent of the plaintiff; that he carried on business on his own account, purchasing his goods of the plaintiff and of other large retail houses in New York; that the plaintiff did not know the consideration of the notes but presumed they were for goods sold, and that he was ignorant of any fraud in such sale.

The plaintiff has been guilty neither of fraud nor gross negligence. The purchaser of a note before maturity has a right to assume that it is given on good consideration. The defendant, by his signature, gives notice to all the world of that fact, and promises when due that he will pay it to the person who may at the time happen to be the legal holder of the same. The purchaser is not bound to inquire. The maker has absolved him from that duty. Where he has paid full consideration for the note before due, fraud only will prevent his recovery, or gross negligence equivalent to fraud. In *Goodman* v. *Harvey*, 4 Ad. & E. 870, which was an action on a bill of exchange, Lord Denman says: " We are all of opinion that gross negligence only would not be a sufficient answer, where a party has given consideration for the bill; gross negligence may be evidence of *mala fides*, but it is not the same thing." In *Goodman* v. *Simonds*, 20 How. 343, it was held that a *bona fide* holder of a negotiable instrument for a valuable consideration, without notice of facts impeaching its validity, if indorsed to him before due, may recover upon it, though, as between antecedent parties, the transaction may be without any validity. In *Murray* v. *Lardner*, 2 Wall. 110, it was decided that a purchaser of coupons, in good faith, was unaffected by the want of title of the vendor. Applying the principles applicable to a note indorsed before maturity, Swayne, J.,

says : " Suspicion of defect of title, or the knowledge of circum-
stances which would excite such suspicion in the mind of a pru-
dent man, or gross negligence on the part of the taker at the time
of the transfer, will not defeat his title.    That result can only be
produced by bad faith on his part."

The purchaser of negotiable paper not due is under no obliga-
tion to make inquiries as to its origin.    Nor is he required to be
on the alert for circumstances which might excite suspicion.
*Magee* v. *Badger*, 34 N. Y. 247.    *Belmont Branch Bank* v.
*Hoge*, 35 N. Y. 65.    A party taking a bank bill in good faith
may recover upon it, although he be guilty of gross negligence in
not ascertaining that it had been fraudulently put in circulation.
*Worcester County Bank* v. *Dorchester & Milton Bank*, 10
Cush. 488.    A note may be negotiated on the last day of grace
within business hours and the purchaser acquires a good title,
unless he has notice of a defect in the consideration.    Gross negli-
gence in not making inquiry is insufficient *per se* to defeat his
title, though it may constitute evidence of fraud.    *Crosby* v.
*Grant*, 36 N. H. 273.    In *Smith* v. *Livingston*, 111 Mass. 342,
345, the doctrine of *Goodman* v. *Simonds*, 20 How. 343, is
adopted as the true view of the law, notwithstanding previous
decisions which are in conflict with it.    " The true question," says
Morton, J., " for the jury is not whether there were suspicious
circumstances, but whether the holder took it without notice of
any infirmity or taint.    This rule is simple, easily understood and
acted on, and in conformity with the general principles of com-
mercial law, which protect the free circulation of negotiable paper.
The other rule laid down in some of the cases, that an indorsee
for value cannot recover if he takes the note without due caution,
or under circumstances which ought to excite the suspicions of a
prudent man, is indefinite and uncertain.    Circumstances which
might excite the suspicion of one man might not attract the atten-
tion of another.    It is a rule which business men cannot act upon
in the ordinary affairs of life with any certainty that they are
safe."

In *Phelan* v. *Moss*, 67 Pa. St. 59, it was held that the pur-
chaser, before due and without notice, of a negotiable promissory

note, fraudulent as between the original parties, gets good title thereto, although he took it under circumstances which ought to excite the suspicion of a prudent man. Gross negligence is not enough to defeat the title of the holder for value; *mala fides* must be shown. So it was held in *Hamilton* v. *Vought*, 34 N. J. 187, that, in the absence of bad faith, the taking of a note under suspicious circumstances would not avail to defeat it. A charge, that the indorsee of a note before maturity, the defense being fraud, could not recover if he had notice of such facts and circumstances as would have put a prudent man on inquiry, was held erroneous. The jury should have been instructed that actual notice of fraud was necessary to defeat a recovery. *Lake* v. *Reed*, 29 Iowa, 258. In *Johnson* v. *Way*, 27 Ohio, 374, the same rule was established. In *Hamilton* v. *Marks*, 16 Am. Law. Reg. (N. S.) 37, the questions here presented were examined and determined by the supreme court of Missouri. It was there held that where a negotiable note is taken in good faith and for value before maturity, the holder has a good title, notwithstanding there may have been circumstances connected with the transfer sufficient to have put an ordinarily prudent man on inquiry. In *Moorehead* v. *Gilmore*, 77 Pa. St. 118, 119, Sharswood, J., in delivering the opinion of the court, says : "The latest decisions in England and in this country have set strongly in favor of the principle that nothing but clear evidence of knowledge or notice of fraud or *mala fides* can impeach the *prima facie* title of a holder of a negotiable paper taken before maturity. It is of the utmost importance to the commerce of the country that it should be strictly adhered to, however hard its operations in particular instances." In *Collins* v. *Gilbert*, 94 U. S. Sup. Court, 753, it was held that a negotiable instrument, payable to bearer or indorsed in blank, produced by a transferee suing to recover the contents, is, when received in evidence, clothed with the *prima facie* presumption that he became the holder of it for value at its date in the usual course of business, without notice of anything to impeach his title. "Proof of such facts and circumstances," observes Clifford, J., in delivering the opinion of the court, "as would have put a reasonable man upon inquiry in relation thereto, is not sufficient

to constitute a defense to a suit by the holder. *Lake* v. *Reed*, 29 Iowa, 258. *Gage* v. *Sharpe*, 24 Id. 15." In *Brown* v. *Spofford*, 95 U. S. Sup. Court, 474, the same doctrine was reaffirmed, Clifford, J., remarking that "nothing short of fraud, not even gross negligence, if unattended with *mala fides*, is sufficient to overcome the effect of that evidence (possession), or to invalidate the title supported by that evidence." Mere negligence on the part of the indorsee of negotiable paper is not sufficient to deprive him of the character of a *bona fide* holder. Proof of bad faith will alone deprive him of that character. *Shreeves* v. *Allen*, 79 Ill. 553. *Johnson* v. *Way*, 27 Ohio, 374. *Hamilton* v. *Marks*, 63 Mo. 167. *Harvey* v. *Eppinger*, 34 Mich. 29. *Commercial Nat. Bank* v. *First Nat. Bank*, 30 Md. 11.

The leading case opposed to the decisions cited is that of *Gill* v. *Cubitt*, 3 Barn. & Cress. 466, in which Abbott, C. J., instructed that " there were two questions for their consideration ; first, whether the plaintiff had given value for the bill, of which there could be no doubt; and, secondly, whether he took it under circumstances which ought to have excited the suspicions of a prudent and careful man. If they thought that he had taken the bill under such circumstances, then, notwithstanding he had given the full value for it, they ought to find a verdict for the defendant." This the jury did, and the ruling of the presiding judge was sustained. But, as has been seen, the rule then first promulgated in England, has been repudiated there as well as by the supreme court of the United States, and of the several states wherever the question has arisen. Mere suspicion is too vague a basis for any rule. Some are more suspicious than others. One may suspect where another would not.

In this state, though there may be found some remarks indicating an approval of the doctrines of *Gill* v. *Cubitt*, there has been no authoritative decision sustaining the law as stated by Abbott, C. J. In *Aldrich* v. *Warren*, 16 Maine, 465, the ruling of the court was " that, if it was made out that there was fraud in the inception of the note, the burden of proof was on the plaintiff to show that he came innocently by it and paid a fair consideration for it." To this ruling exception was taken. The only

question for adjudication was the correctness of this ruling. The court affirmed it, but in the opinion, Weston, C. J., added an element not put in issue by the exceptions, and not required for the determination of the cause, viz., that the transfer should be "unattended with any circumstances justly calculated to awaken suspicion." This new element must be regarded as a mere *obiter dictum.* In *Perrin* v. *Noyes,* 39 Maine, 384, 385, no such statement of the rule as given by Weston, C. J., was necessary to the decision of the case or was called for by the exceptions. In *Wait* v. *Chandler,* 63 Maine, 257, Walton, J., ruled that evidence to impeach a promissory note in the hands of a *bona fide* purchaser before maturity and without notice, was inadmissible. In other words, he must have actual notice,—a mere knowledge of suspicious circumstances would not be enough. In *Smith* v. *Harlow,* 64 Maine, 510, 511, the court found the purchase of the bonds in controversy to have been made in good faith, for value, and without notice of any fraud. In *Abbott* v. *Rose,* 62 Maine, 194, it was held that a *bona fide* purchaser without notice of any fraud may recover, although, as between the original parties, there was fraud in the inception of the note.

The result, after a careful examination of the authorities, is that the holder of negotiable paper, taking it before maturity for good consideration in the usual course of business, without knowledge of facts impeaching its validity, holds it by a good title.

To defeat his recovery it is not enough to show that he took it under circumstances than ought to excite suspicion in the mind of a prudent man.

Applying the principles established by an overwhelming weight of authority to the facts found in the case at bar, the plaintiff's right to recover is fully established. He had neither actual nor constructive notice of fraud, if it existed. He took the notes for value and in the usual course of business. The fact that a small discount was made is immaterial. It afforded no reason to suspect dishonesty in the obtaining the notes in suit, still less can it be regarded as establishing fraud in their inception, or as affording actual notice of its existence.     *Judgment for plaintiff.*

WALTON, DANFORTH, VIRGIN, LIBBEY and PETERS, JJ., concurred.

BARROWS, J., concurred in the result, because there was no evidence to connect the merchant with the peddler, except the inadmissible statement of the defendant that the peddler said he was the agent for the merchant, which should have been stricken out.

DICKERSON, J., non-concurred, on the grounds that the statement that " the goods were manufactured from the best material" was an assertion of a material fact known by him to be false, but not known or determinable by the defendant on inspection of the goods; and that the facts should be submitted to the jury on the question of notice.