### I. D. FOX v. THE BANK OF KANSAS CITY.

1. NEGOTIABLE PAPER—*Transfer on First Day of Grace.* Sec. 2 of ch. 14, Comp. Laws 1879, must be construed with § 4 of the same act; and notwithstanding the language of the former, a negotiable bill or note indorsed and transferred on the first day of grace, is transferred before maturity, and vests in the purchaser a title protected against infirmities in the paper.

2. BANK—*When a Purchaser for Value, When Not.* While the mere discounting of paper by a bank and placing the amount thereof to the credit of a depositor, having already a balance to his credit, will not constitute the bank a purchaser for value so as to cut off equities, yet as by the discount and credit, it becomes a debtor to the depositor, if before receiving notice of any infirmity in the paper, it pays out on the checks of the depositor the full amount due him including the discount, it thereby becomes a purchaser for value, so as to be entitled to full protection.

3. PAYMENTS, *Applied to Oldest Debts.* This rule obtains, although the depositor by subsequent deposits or discounts preserves a constant balance to his credit, for in the absence of special facts demanding a different rule, payments are applied to the oldest debts.

4. ———— The fact that the depositor is itself a bank, and the regular correspondent of the discounting bank, does not change the rules as above stated.

5. PURCHASER OF PAPER—*When Protected, When Not.* Mere suspicion of an infirmity in negotiable paper does not prevent a party from purchasing it freed from such infirmity. The purchaser loses protection against an infirmity only when he is guilty of bad faith, or buys with actual notice.

6. PURCHASER OF PAPER *Not Mature, Not to Repudiate, etc.* While after due paper is transferred subject to any defenses, yet if the paper is purchased before maturity, the purchaser will be safe in making payment after maturity and after protest for non-payment, if he have no other notice of infirmity in the paper: he may not repudiate his own obgation upon the mere suspicion created by the failure of the maker of the paper to meet his obligation.

7. AGREEMENT, *Construed; Indemnity Bond, No Loss by Failure to Give.* A, holding a note against B, commenced an action thereon, and attached a stock of goods belonging to B. The stock was already held under another attachment, and was also subject to a chattel mortgage. C thereupon executed a note to A as additional security, and upon an agreement that A should prosecute the attachment suit to effect, and that any amount received as the proceeds of such attachment should be applied in reduc-

tion of C's note. At the time of the levy of A's attachment, A had promised the sheriff that he would give him an indemnity bond against the claim of the chattel mortgagee. After the execution of this note, A refused to give such indemnity bond, and the sheriff released the goods from the levy of the attachment, and nothing was realized by A thereon. What the amount of the chattel mortgage was, does not appear. *Held,* In an action against C on his note, that A's agreement simply required him to pursue all the ordinary legal means for realizing in his attachment suit, and did not compel him to incur extraordinary and unusual risk by giving an indemnity bond; and also that as the amount of the chattel mortgage is not disclosed, and may have been largely in excess of the value of the goods, and no suggestion of any invalidity in the mortgage is made, it cannot be presumed that the goods would have paid more than the chattel-mortgage debt, and therefore no loss is shown by the failure to give the indemnity bond.

### *Error from Lyon District Court.*

ACTION brought by the *Bank of Kansas City* against *Fox* and the *First National Bank of Emporia,* upon a promissory note. Trial at the September Term, 1882, of the district court, and judgment for the plaintiff bank, against defendant *Fox,* who brings the case here. The opinion states the facts.

*C. N. Sterry,* and *T. N. Sedgwick,* for plaintiff in error.

*Cunningham & McCarty,* and *Scott & Lynn,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought by defendant in error, plaintiff below, upon a promissory note, which, with its indorsements, reads as follows:

"$346.          EMPORIA, KANSAS, January 7, 1881.

February 14, 1881, for value received, I promise to pay to the order of L. Severy three hundred and forty-six & no-100 dollars, at the First national bank of Emporia, with interest, at the rate of twelve per cent. per annum after maturity until paid; also cost of collection, including reasonable attorney's fees, if suit be instituted on this note.

                                        I. D. Fox.

No. 9812.   Due Feb. 17.

[Indorsed as follows]: L. Severy. Without recourse. Pay to the order of Joseph S. Chick, Pres't of Bank of Kansas City, Mo. H. C. Cross, Pres't."

The action was commenced February 22, 1881. The defendant answered, setting up that the consideration of the note was an executory contract, through the breach of which on the part of the actual payee, the consideration of the note had failed. Of the nature and effect of this contract and its alleged breach we may have occasion to say more hereafter. The defendant, in addition to the failure of consideration by the alleged breach, claimed that the plaintiff was not a *bona fide* purchaser for value before maturity. Upon the trial the court instructed the jury peremptorily to find for the plaintiff, and the defendant alleges error.

We shall first inquire whether the plaintiff was a *bona fide* holder for value, and before maturity. The note, as will be perceived by its terms, was payable February 14. It was indorsed, and transferred to plaintiff on February 15, two days before the time at which the note, counting days of grace, was payable. If the ordinary rule of the law-merchant obtains, it will not be doubted that one who purchases before the expiration of the days of grace is entitled to the ordinary protection of the *bona fide* holder. (*Crosby v. Grant,* 36 N. H. 273; 1 Daniel on Neg. Inst., § 787.) The claim is, that our statute creates a departure from that rule. Section 2 of the statute concerning bills and notes authorizes, in terms, a full defense to a bill or note which is indorsed or delivered *"after the day on which it is made payable."* The statute, section 4, also provides that negotiable bills and notes shall be entitled to three days of grace. We think, putting these two sections together, no departure was intended from the ordinary rule of the law-merchant. In 1 Daniel, *supra,* § 614, the author says:

"By custom, however, they became universally recognized; and although still termed 'days of grace,' they are now considered, wherever the law-merchant prevails, as entering into the constitution of every bill of exchange and negotiable note, both in England and the United States, and form so completely a part of it that the instrument is *not due in fact or in law* until the last day of grace."

We think all that is meant by the language of the sections

above cited is an affirmation of the general rule of the law-merchant.

Again, it is claimed that the plaintiff was not a purchaser for value — that it paid nothing. The facts are, that the note was transferred by Severy, the payee, to the First national bank of Emporia, and by it indorsed to the plaintiff. The plaintiff was the correspondent of the Emporia bank, and the latter had a general account with it. No money was forwarded to the Emporia bank at the time the note was discounted; but the amount of the discount was simply credited to its account. Now it is claimed by counsel for plaintiff, that the action of a bank in crediting a party's account is in effect a payment, or at least creates the bank a purchaser for value. We have had occasion in the case of *Mann v. The Bank,* ante, p. 412, to consider this question and have nothing more to add to the opinion therein expressed. The mere crediting of an account by a bank to its depositor, where the effect of the credit is only to increase the balance due the depositor, is not a payment and does not make the bank a purchaser for value. Nor is the rule changed by the fact that the depositor is itself a bank, and the discounting bank its regular correspondent.

But it is claimed by counsel for plaintiff that if the mere fact of passing the amount to the credit of the Emporia bank was not of itself a payment, the amount of the credit was in fact drawn out by the Emporia bank before the plaintiff had notice of any infirmity in the paper. From the monthly account rendered by the plaintiff to the Emporia bank, which was offered in evidence, and which was the only evidence bearing upon the question, it appears that the note was discounted, and the amount credited to the Emporia bank on February 15; that at the close of that day the amount on the credit side of the account, from the first of February, was $52,802.36. The amount on the debit side was $32,479.58, leaving a balance due the Emporia bank of $20,322.78; that during the subsequent five days, ending February 21, the Emporia bank drew out $26,774.67, which

but for subsequent deposits by the Emporia bank would have overdrawn the account, and left the Emporia bank in debt to the plaintiff. In other words, within five days after this discount everything then due the Emporia bank was paid to it; and it is claimed by plaintiff that at that time, if not before, the plaintiff had fully paid the note, and was entitled to the full protection of a purchaser for value. This claim we think is correct. The general rule as to the application of payments, there being no special facts to interfere, is that the first payments go to the oldest debts; so all the money drawn out by the Emporia bank, in the absence of some special facts, was a payment by the plaintiff of the oldest deposits and discounts; and when, at the close of February 21, the balance due February 15, had been fully checked out, the plaintiff had paid for every deposit and discount made by the Emporia bank prior to February 15. (*Shellabarger v. Binns*, 18 Kas. 345.) The question then is, if the plaintiff had fully paid at the close of February 21, had it before that time any notice of infirmity in the paper? There are only three matters that can be considered as giving any knowledge, or affording any intimation, to the plaintiff of any claimed infirmity in the paper prior to the close of February 21. These are, first, that the Emporia bank when it forwarded the note to the plaintiff for discount, wrote this letter:

"EMPORIA, KANSAS, Feb. 12, 1881.

*Jos. S. Chick, Esq., Kansas City* — DEAR SIR: Herein find note of I. D. Fox, for discount and credit. I charge your account $345.50, discount 50c: 2–15. Please attend to this immediately on receipt. I attach a waiver of protest, fearing note might not be returned in time for protest, owing to storms. The maker of this note is good.

Respectfully, H. C. CROSS, *President.*"

Second, that when after protest it returned the note, it sent this letter:

"FIRST NATIONAL BANK, EMPORIA, KAS., 7–18—1881.

*Jos. S. Chick, Esq., Kansas City* — DEAR SIR: I return your collection on Fox, protested. You will please forward this to Cunningham & McCarty, attorneys at this point, with

Fox v. Bank of Kansas City.

instruction to collect at once, saying to them to consult with me as to particulars. This will draw you 12 per cent. until paid. We of course have a point in this, which we will explain when I see you.

Respectfully, H. C. Cross, *President.*"

And third, the note was protested for non-payment.

The first two of these matters may be considered together; and in reference to them it may be stated generally that they contain no information which a party might not act upon without any imputation of bad faith, and the most that can be said in reference to them is that they create a suspicion — that they suggest that possibly there may be something wrong in the paper. But it is finally settled by the large preponderance of the best authority that no mere suspicion will destroy the protection accorded to one dealing in negotiable paper. It is true there has been some conflict in authority in times past, but there is to-day a remarkable concurrence in the views of the ablest courts and the best jurists on the proposition that a purchaser of negotiable paper loses protection against an infirmity only when he is guilty of bad faith or buys with actual notice. (1 Daniel Neg. Inst., § 775, p. 630; *Hamilton v. Marks,* 63 Mo. 167; *Houry v. Eppinger,* 34 Mich. 29; *Murray v. Beckwith,* 81 Ill. 43; *Phelan v. Moss,* 67 Pa. St. 62; *Farrell v. Lovett,* 68 Me. 326; *Spooner v. Holmes,* 102 Mass. 507; *Murray v. Lardner,* 2 Wall. 110; *Swift v. Smith,* 102 U. S. 442; *Morehead v. Gilmore,* 77 Pa. St. 118.)

In reference to the third fact, it is unquestionably true that one who purchases overdue paper takes it subject to any defenses. The reason 'for this rule is fully stated by Chief Justice Shaw, in *Fisher v. Leland,* 4 Cush. 456:

"Where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation? Why is it not paid? Here is something wrong. Therefore, although it does not give the indorsee notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry; he takes only such title as the indorser himself has, and subject to any defense which might be made if the suit were brought by the indorser."

So that if the plaintiff had purchased this paper after it became due, defendant would be entitled to present any defense he had as against the payee. But it bought before maturity. By its purchase it assumed an obligation directly to the Emporia bank; and the question here is, whether it would be justified in refusing payment of such obligation, upon the ground that the maker of the paper which it had bought failed to pay upon presentation. It will be manifest, on a moment's consideration, that there is a vast difference between the two cases as to the proper effect of non-payment. The presumption, of course, in reference to negotiable paper, is, that it will be paid at maturity. If not then paid, it may be because the maker is unable to pay, or unwilling at the present time to pay, or that it has not been presented for payment, or because he has a good defense thereto. When such paper then is offered for sale, the purchaser must know that one of these reasons exists for its non-payment, and it is simply fair to all parties that he should advise himself as to which is the true reason; and failing to do so, he must meet the consequences of the existence of any of these reasons. He is not justified in assuming the existence of one reason and incurring an obligation to the prejudice of the maker, when the other may in truth be the reason. But when he has in fact purchased and given his own obligation, then there should be something more than a mere possibility to justify him in repudiating such obligation. Before he buys, it is a purely voluntary matter whether he shall purchase. He exposes himself to no commercial dishonor in declining to purchase. Nothing can be said against his credit if he fails to purchase. But after purchase, his refusal to pay exposes him to discredit, and if unnecessarily done, affects his commercial standing. Before he is authorized or justified in so doing, he should be informed not merely that there may be, but in fact that there is, a good reason for his refusal. The non-payment by the maker may be solely on account of inability to pay, or a present unwillingness, without any question, or possibility, or even thought, of legal

defense, which of course would excuse in no manner the repudiation of his own obligation. It would seem simply fair to him that, having purchased before maturity, having then contracted to pay, he should, after maturity, be permitted to perform his own obligation and make payment, unless he has some actual knowledge of an infirmity, or is acting in bad faith. In this way, and in this way only, can he preserve fully his own commercial standing; and in this there is no injustice done to the maker of the paper. When it is protested for non-payment, the protest is made at the instance of the holder; and if the maker has any other reason than mere inability for non-payment, if he has any legal defense to the paper, he should instantly acquaint the holder with that fact; otherwise the holder should be safe in keeping good his own promises of payment. We think, therefore, upon the facts as disclosed, the plaintiff was shown to be a *bona fide* holder before maturity for value, and as such it was entitled to recover, notwithstanding any defense which the maker may have against the payee.

But further, in reference to the failure of consideration to which we alluded in the opening of this opinion, it may very pertinently be inquired whether the answer disclosed any defense. The answer alleged in brief these facts: That the Emporia bank had a note against one J. E. Jordan; that it had commenced an action in attachment against said Jordan, and levied on a stock of goods; that such goods were of the value of thirty-five hundred dollars; that such goods were subject to a prior levy in favor of J. Ledere for about the sum of five hundred dollars; that they were also subject to a prior chattel mortgage in favor of Rozencranz & Weber (the amount of this chattel mortgage was not stated); that the defendant executed his note as additional security to the bank, upon the agreement that it would prosecute its attachment suit to effect, and that anything realized upon his attachment should be credited upon this note; that at the time said bank commenced its attachment suit it had agreed to give the sheriff a bond of indemnity against the claim of the chattel mort-

gage; that after the giving of this note, the bank refused to execute such bond of indemnity, and thereupon the sheriff refused to continue his levy, and released the goods to the chattel mortgagee. Now upon these facts it seems to us that two propositions are clear: first, that in the absence of some special agreement the obligation of the bank was simply to continue all ordinary legal means for enforcing its attachment; and second, that its obligation did not compel it to assume extraordinary risk by the giving of an indemnity bond. It is evident that the giving of an indemnity bond might expose it to large risks in the matter of costs, expenses, etc. No intimation is made of the invalidity of the prior attachment, or of the invalidity of the chattel mortgage. We are not advised whether the chattel mortgage was more or less than the value of the goods. We are not to presume that it was less. If it was more, and a valid claim, then the attachment was of course valueless as a lien upon these goods, and nothing would be realized by further prosecution of the attachment. So that for two reasons it would seem that the answer failed to show a defense: first, that the bank was under no obligation by its agreement to incur extraordinary risks by giving an indemnity bond; and second, it does not appear that anything would have been realized by the giving of such a bond, and if nothing would have been realized nothing has been lost by a failure to give it. So that if the action had been in the name of the payee, it must have been adjudged that no defense was shown.

This, we believe, covers all the questions in the case necessary for consideration. Upon the whole record, we think the judgment of the district court was right, and it must be affirmed.

All the Justices concurring.