FRANK ROCKEFELLER V. K. B. RINGLE.

No. 15,262.   (94 Pac. 810.)

SYLLABUS BY THE COURT.

1. PROMISSORY NOTES—*Purchaser for Value.*  Where a commission company assigns, and guarantees the payment at maturity of, accommodation notes to a bank, and an officer of the commission company who is not a guarantor of the notes, but who has theretofore given a written undertaking to the bank indemnifying it for any debts of the company thereafter contracted to an amount much larger than the amounts of the notes, pays after maturity a balance due upon the notes and receives the notes from the bank, he does not thereby become a purchaser of the notes for value in the usual course of business.

2. ———— *Payment by a Surety—Rights Acquired.*  In such case the officer who pays to the bank the balance due upon the notes does so as the surety of the commission company, and in taking the notes acquires no greater rights against the maker thereof than his principal, the commission company, would have had had the notes been returned to it, and he cannot recover of the maker thereon.

Error from Reno district court; PETER J. GALLE, judge.  Opinion filed March 7, 1908.  Affirmed.

STATEMENT.

FRANK ROCKEFELLER commenced this action against K. B. Ringle in the district court of Reno county for the sum of $5333.36, which, with interest, he claimed to be due upon three promissory notes, copies of which are attached to the petition as "Exhibits A, B, C."  The notes were each dated April 9, 1901, and due October 8, 1901, and were the same in form except as to the amount; and each was indorsed with two credits of payment, the dates of such payments being the same as to each note.  The same proportion of the whole amount of each note was paid, and each had the same assignment indorsed thereon.  "Exhibit A" reads:

"KANSAS CITY, MO., April 9, 1901.
"October 8, 1901, after date, I, we or either of us, promise to pay to the order of Seigel-Sanders Live

Stock Commission Co., at their offices, thirty-five hundred thirteen and 15-100 dollars ($3513.15), with interest from maturity at the rate of 8 per cent. per annum until paid. Value received.

No. 1302.            K. B. RINGLE.

[Indorsed on back as follows] :

"Cdt 9/26/1901 $2,107.89
"Cdt 9/27/1901    149.04

"For value received, we hereby assign this note to ——————— or order, and waive demand, notice and protest of same, and guarantee payment at maturity.

SEIGEL-SANDERS LIVE STOCK COMMISSION CO.,
*By Frank Seigel, Pt.*"

It is alleged in the petition that these notes were indorsed by the Seigel-Sanders Live Stock Commission Company to the Des Moines National Bank, of Des Moines, Iowa, before maturity, and that before maturity and in due course of business and for a valuable consideration the same were sold by the bank to the plaintiff, who is the owner and holder thereof.

By his answer thereto Ringle admitted the execution of the notes, and averred that they "were given for a lot of cattle, or in renewal of other notes which were executed for a lot of cattle, which the defendant purchased from the Seigel-Sanders Live Stock Commission Company"; that the cattle were brought under an agreement that the commission company should have control and possession of the same at all times; that it was to market the cattle for enough to pay the full amount of the notes, and in no event was Ringle to be held for any deficiency; that Ringle mortgaged the cattle to secure the payment of the notes, and that the cattle were in fact at all times, after the making of the notes, to be held in the possession of the commission company; that about September 11, 1900, the commission company made to defendant a written proposition, as follows:

"DEAR SIR—I had a talk to-day with Mr. Seigel in regard to your cattle, and Mr. Seigel insists that we shall close this deal up at once. I will say to you that I am going to make you a proposition that seems to me

Rockefeller v. Ringle.

more than fair on your part, and that is, if you will set-
tle the pasture bill against these cattle, and the taxes,
and turn these cattle over to us in good shape sometime
this coming week, that I will surrender to you your
notes and mortgages, which is giving you at least
$3500, over and above what the cattle would bring on
the present market. Now, Mr. Ringle, I told you that
I would do everything I could to help you out in this
deal, and, seeing the situation down there, have no
blame whatsoever to lay on any one; the drouth has
been severe, and the cattle have done no good, which
you or no one else could help.

"Now, Mr. Ringle, I don't know what Mr. Seigel will
say in regard to this kind of a settlement, for you know
it is losing us a whole lot of money. I will say to you
that any time you are in shape to handle a bunch of
cattle for us, we will let you have them.

"Hoping this will be satisfactory to you, and that
you will be pleased with this proposition, I remain,
                Yours truly,        G. W. SANDERS."

Ringle also alleged that he accepted the proposition
and settled the amount claimed therein with the com-
mission company, and thereafter he made no further
claim to the cattle and had nothing to do therewith;
that on the 9th day of April, 1901, the commission
company, still being the owner of the cattle, requested
Ringle, as an accommodation to the company, and for
no other purpose, to execute the notes sued on and a
mortgage upon the cattle, which he did; and that he
executed the notes sued on without any consideration
whatsoever.

After a motion to strike the answer from the files,
a general demurrer thereto and a motion for judgment
on the pleadings had been successively filed and over-
ruled, Rockefeller replied by a general denial. It will
be observed that the answer contained no general de-
nial.

On the trial to a jury the verdict and judgment were
for the defendant, and the plaintiff brings the case
here.

*Basil P. Finley, Leslie J. Lyons,* and *Carr W. Taylor,* for plaintiff in error.

*George A. Vandeveer,* and *F. L. Martin,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: At the outset of the trial the plaintiff objected to the introduction of any evidence on the part of the defendant, who assumed the burden of proof, for the reason the answer did not state a defense to plaintiff's action. This raised the same question as the demurrer to the answer and the motion for judgment on the pleadings, viz., that although the answer purported to state a defense, and prayed for judgment against the plaintiff, it did not put in issue any of the facts alleged in the petition. Whether the lack of a general denial in the answer was specifically called to the attention of the court does not affirmatively appear, and it does not seem possible that such could have been the fact. It does appear from the answer that the defendant did not intend to admit the plaintiff's cause of action, and it sets forth a defense which, if coupled with a general denial, would have been a good defense if found to be true, but would have been of no avail if the undenied facts in the petition were admitted. This, with the added fact that the defendant prayed for judgment, suggests that both the counsel for defendant and the court overlooked the lack of a general denial. This conclusion is further sustained by the fact that after the defendant, who had assumed the burden of proof, had introduced his evidence and rested his case, and the court had sustained a demurrer thereto, it allowed him to introduce further testimony, and then overruled a demurrer to his evidence. Some, at least, of these six rulings were technically erroneous, and with a number of others are assigned as errors upon which we are asked to reverse the judgment.

Notwithstanding these erroneous rulings, it appears that the trial was proceeded with and evidence offered by both the.plaintiff and the defendant as if the undenied allegations of the petition were in issue. There is no suggestion that, should we reverse the judgment in this case and send it back for a new trial, the plaintiff or the defendant would, in case an amended answer was filed including a general denial, have any other evidence to offer than was offered and considered in this trial. Had the plaintiff stood upon the rulings we have referred to and brought the case here, we could not have done otherwise than reverse the judgment. Instead of this, the plaintiff finally introduced evidence and tried out the case as if the general issue had been joined. He thereby consented to an enlargement of the issues, and could not thenceforth complain if the case be regarded as properly tried upon such issues. (*Gilson v. Hays,* 2 Kan. App. 460, 43 Pac. 93; *Edwards v. Sourbeer,* 73 Kan. 224, 84 Pac. 1033; *Mo. Valley R. R. Co. v. Caldwell,* 8 Kan. 247.)

The case will then be considered here, as it evidently was in the court below, as if the general denial had been included in the answer and a general denial filed as a reply. Such an amendment and additional pleading should have been allowed, and probably would have been had the attention of the court been specifically called thereto. Neither party is prejudiced by considering the pleadings as if thus amended, since the issues so framed were not only tried in the court below, but the issues of law thereby involved are fully and ably discussed in the brief of each party here.

We have examined the evidence to which our attention has been called, and it is clearly sufficient to sustain the affirmative defense set forth in the answer, which, under the instructions, the jury necessarily found to be true as the basis of their verdict, to wit, that Ringle signed the notes in question as an accommodation to the commission company and without consideration therefor, and that Rockefeller obtained the

notes in question after maturity.

It further appears from the evidence that Rockefeller was an officer of the commission company, and that he and two other officers of the company executed to the Des Moines National Bank, on January 21, 1901, the following instrument in writing:

"For valuable consideration to us in hand paid by the Des Moines National Bank of Des Moines, Iowa, the receipt of which is hereby acknowledged, we, the undersigned, do hereby agree to make good and guarantee to the said Des Moines National Bank any and all debts which the Seigel-Sanders Live Stock Commission Company, a corporation doing business in Kansas City, Mo., may from time to time contract or become liable for to said bank, however said debts may be contracted or evidenced.

"This guarantee shall be an open one and cover debts and obligations aggregating a hundred and twenty-five thousand dollars at any one time, and shall continue at all times unconditional until revoked by us in writing duly served upon said bank. And for the consideration aforesaid we hereby waive all notice to us or either of us of the beginning or ending of credit which said bank may give to said company under this guarantee of the state of its indebtedness at any time during the existence of this guarantee.

"Witness our hands this 21st day of January, 1901.
Signed:   FRANK SEIGEL,
R. D. SWAIN,
FRANK ROCKEFELLER.
(Witness)   HARRY A. MOORE."

It does not appear that Rockefeller was an indorser or guarantor of the particular notes, but by the foregoing contract he became a surety for the commission company to the Des Moines National Bank, some time even before the execution of the notes in question, for any and all debts for which the commission company might become liable to the bank. It also appears from the evidence of Rockefeller himself that he paid the deficiency upon the notes in question by reason of this surety contract, and thereupon received the notes after their maturity.

It therefore does not seem to be material whether the writing indorsed upon the back of the notes and signed by the commission company constituted a commercial indorsement or whether, as contended, it was simply an assignment.

As between himself and the commission company Ringle owed it nothing on the notes, but the commission company used the notes and the mortgage given to secure them as a credit with the Des Moines bank. After selling the cattle, which really belonged to the commission company, and applying the proceeds on the notes, the bank looked to the commission company on its guaranty, and to Rockefeller as surety for the commission company, for the balance of the debt. Rockefeller paid the debt; whether as a separate transaction or as an item in a larger amount of indebtedness does not appear, and probably is not material. In either event he did not become a purchaser of the notes in the usual course of business. Indeed, he does not appear to have purchased the notes at all. He paid no money for them which he was not obliged to pay under his contract as surety for the commission company. (*Mann v. National Bank*, 30 Kan. 412, 1 Pac. 579; *Fox v. Bank of Kansas City*, 30 Kan. 441, 1 Pac. 789.)

Again, it is contended by the plaintiff that he acquired the notes from the Des Moines bank under his guaranty to that bank and is entitled to be subrogated to all rights and remedies of that bank against Ringle. He cites *Investment Co. v. Law*, 62 Kan. 193, 61 Pac. 745, in support of this proposition. As we have seen, Rockefeller was not a guarantor to the Des Moines bank upon the notes of Ringle, but a surety for the commission company of all of its indebtedness to the Des Moines bank to a certain amount, and herein lies the distinction between this case and the case cited.

The last objection is that it was error for the court to instruct the jury that if Rockefeller purchased the notes after maturity he could not recover. In the view we have taken this was not prejudicial to the plaintiff.

It simply imposed an unnecessary burden upon the defendant, if our view that Rockefeller did not purchase the notes at all is correct. He paid the balance due upon these notes, as before said, as surety for the commission company, and not as guarantor for Ringle. He must look to his principal for his indemnity. If his principal had any rights against Ringle upon the notes he could, perhaps, standing in the shoes of the commission company, avail himself of any benefits that might be derived therefrom. But, as before said, the commission company had no claim against Ringle thereon; therefore Rockefeller had none.

The judgment of the district court is affirmed.