## The Savings Bank of New-Haven *against* Bates.

8 505
75 432

Where a note, made in 1825, for discount at the *Eagle Bank*, was dis-
counted, by that institution, upon the principle of *Rowlett's* tables,
reckoning sixty days as the sixth of a year and three days as the
tenth of a month; it was held, that whether such note was usurious
in its inception or not, the defence of usury (assuming its existence)
was taken away, by the validating act of 1827.

The days of grace on negotiable notes, constitute a part of the original
contract; and the negotiability of the note is as unrestricted, during
those days, as before their commencement.

It is a part of the contract between the maker and payee of a negotia-
ble note, that the former will make payment to the legal holder, when
the note comes to maturity; and he has no right to pay it to any one,
before it comes to maturity.

An incorporated bank, after its insolvency, may *bona fide* assign its ef-
fects, to pay and secure one creditor in preference to another.

Therefore, where *A.*, on the 2d of *September,* made his negotiable note,
payable sixty days after date, which was immediately discounted, by
the *Eagle Bank;* on the 16th of *September,* that institution stopped
payment, being insolvent; on the 2nd of *November,* the 61st day after
the date of the note, *A.*, being the holder of the bills of the *Eagle*

*Bank* to the amount of his note, tendered them to the bank in satisfaction of his note, which was refused, on the ground that the note was not then due; he then gave notice, that when the note should become due, he should again present the bills for the same purpose; on the next day, which was the 2nd day of grace on the note, the *Eagle Bank* indorsed and delivered it, *bona fide*, to *B.* as security for a debt due him from the bank, *B.*, at the same time, having notice of the preceding facts; in an action on the note brought by *B.* against *A.*, it was held, 1. that *A.* had no right to make payment of his note to the bank, or to claim a set-off, when he first tendered the bills; 2. that the subsequent transfer of the note to *B.*, before it fell due, was legal; 3. that these facts, though known to *B.* when he took the note, did not deprive him of the ordinary rights of an indorsee of negotiable paper; and consequently, that he was entitled to recover.

THIS was an action by the indorsee against the maker of a a promissory note.

The cause was tried, under the general issue, with notice of the matters relied on for defence, at *New-Haven,* at an adjourned term in *April* 1830, before *Bissell,* J.

The note in question was one for 500 dollars, signed by the defendant, dated the 2nd of *September,* 1825, and payable to *William S. Rossiter,* cashier of the *Eagle Bank,* or order, sixty days after date. This note, on the day of its date, was discounted, by the *Eagle Bank,* and became the property of that corporation; the discount being computed according to *Rowlett's* tables, reckoning 360 days in a year. On the 15th of *September,* while the note was owned and held by the *Eagle Bank,* that institution stopped payment and became totally insolvent. Previous to this time, the defendant had become the owner, and then owned and possessed, the bills of the bank, payable to bearer, to the amount of 500 dollars. On the 2nd of *November,* the 61st day after the date of his note, the defendant gave notice to the corporation of their indebtedness to him on such bank bills, which he, at the same time, presented for payment, and which he also tendered in satisfaction of the note in suit. The *Eagle Bank* refused payment of such bills, and also refused to receive them in satisfaction of, or in exchange for, the defendant's note, assigning as a reason, that the days of grace on such note had not expired. The defendant then gave notice to the bank, that when his note should become payable, he should again present the same bills for the same purpose; and one of the clerks of the bank, at the defendant's request, then sealed up the bills and made an indorsement thereon of their amount, and that payment had been de-

New-Haven,
July, 1831.

Savings Bank
v.
Bates.

manded and refused, and re-delivered them to the defendant. Afterwards, and before the expiration of the days of grace on the defendant's note, *viz.* on the 3rd of *November*, the *Eagle Bank*, by their cashier *Rossiter*, indorsed it and delivered it to the plaintiffs. On the 4th of *November*, being the third day of grace, the defendant went to the banking-house of the *Eagle Bank*, without knowledge of the transfer and delivery of his note to the plaintiffs, and again tendered the same bills, sealed up, to the bank, for payment or in satisfaction of his note, which he demanded to be given up ; and the bank again refused to pay or receive the bills, or to give up the defendant's note, alleging that it was assigned, and that they had no concern with it. The defendant still holds the bank bills, sealed up, and the amount is still due to him.

The defendant claimed and introduced evidence to prove, that the plaintiffs, at the time of the transfer of the defendant's note to them, had notice of all the facts before stated, so far as they had then transpired ; and that such transfer was made by the *Eagle Bank* and received by the plaintiffs, with intent to defraud the defendant, by preventing the application of the bills to the payment of his note, and then compelling payment of the note in money. The plaintiffs denied such notice and any fraudulent intent ; claiming that the transfer was made *bona fide*, for the purpose of furnishing additional security to the plaintiffs for a debt due to them from the *Eagle Bank*, which was not then deemed to be fully secured by antecedent assignments.

Several points of law arose, in relation to which the judge charged the jury, in opposition to the claims of the defendant, as follows : " That the reservation of interest, after the rate aforesaid, on the discount of the defendant's note, was lawful and not usurious ; that the *Eagle Bank* was not bound to receive payment of said note, when it was first offered by him, nor to keep it until it should be due, for the purpose of a set-off, but might lawfully negotiate it until the expiration of the third day of grace, notwithstanding the insolvency of the bank and its indebtedness to the defendant on its bills ; that if the jury should find, that the plaintiffs, at the time of the transfer of the note, had notice of the facts in the case, yet if they should further find, that the transfer was made and taken for the purpose of securing the debt due from the *Eagle Bank* to the plaintiffs, and was not merely colourable, their verdict

New-Haven,
July, 1831.

Savings Bank
v.
Bates.

must be for the plaintiffs to recover of the defendant the amount of the note and interest ; but if they should find, that the transfer was merely colourable, and not for the purpose of security, their verdict must be for the defendant."

The jury returned a verdict for the plaintiffs ; and the defendant moved for a new trial for a misdirection.

*Sherman* and *R. S. Baldwin,* in support of the motion, contended, 1. That the discount being taken at the rate of 6 *per cent.* for 360 days, instead of a year, it was more than lawful interest ; and consequently, the note was usurious and void. *The New-York Firemen Insurance Company* v. *Ely* and *Parsons,* 2 *Cowen* 678. *Bank of Utica* v. *Wagar,* 8 *Cowen* 398.

2. That upon the facts, which existed at the transfer of the note, the *Eagle Bank,* had they retained it, would not have been entitled to recover. That corporation being insolvent and indebted to the defendant in an equal amount, he had a right, after their refusal of payment, to insist on a set-off. This was a legal right, conferred by statute. It always existed in equity. Whenever a right of set-off exists, and is insisted on, by the party entitled to demand it, " the debts are from that time extinguished, to the amount due and concurring, by operation of law." 2 *Poth. Con.* 106. (*Newbern* ed.) The equitable doctrine of set-off is derived from the civil law, and proceeds on the ground of preventing injustice.

It can make no difference to the party insolvent, whether the debt due *to him* has become payable or not, when the offer of set-off is made, if that which *he owes* has fallen due, and payment has been refused to the creditor. As he can, in no event, be entitled to receive any thing from the other party, he can have no possible *honest* motive for delaying the set-off, and, at the same time, withholding payment of the sum which he owes. This does not compare with the case of a tender of payment claimed to be made before it has become due ; and which, it is obvious, in certain cases, the creditor may have a motive of interest to refuse. In the one case, a debt is admitted to be owing ; in the other, denied. In the one case, it may not be convenient for the creditor to receive the money, when offered ; in the other, it must always be for the benefit of the insolvent (his own debt being due) to make the set-off. Interest was accruing against the *Eagle Bank,* but none in their favour on the note of the defendant. See *Ellis* v. *Craig,* 7 *Johns. Chan. Rep.* 12.

**3.** That a transfer of the note, by the *Eagle Bank*, after the offer and notice of set-off, with a view of enabling the assignee to collect it, when no debt in fact was due, or ever would be, to the *Eagle Bank*, was *unconscientious* and *fraudulent*. It was an attempt, by means of the *negotiable* quality of the note, to enforce money from the defendant, which, as between the *Eagle Bank* and the defendant, he ought not to pay.

4. That if the indorsee had *notice*, at the time of the transfer, of the facts, which made it inequitable and fraudulent, and which, on application to chancery, would have been the ground of an injunction, it is equally fraudulent for him to receive it and seek to enforce it. If it were not negotiable, it will be admitted, that the payee being insolvent, the holder could not collect it. So also, though negotiable, if negotiated *after due*, even without notice of the prior condition of the original parties, the assignee could not enforce it. *Chitt. Bills*, 165. Why? The note is just as negotiable after due as before. Simply because he is presumed to have *had notice*. *Brown* v. *Davis*, 3 *Term Rep.* 82. The rule that the indorsee of negotiable paper, in the ordinary course of business, is not *prima facie* affected by any equities existing between the prior parties, was adopted for commercial convenience and the *prevention of fraud*. Such a holder is presumed to have taken it honestly, without notice. But this presumption is rebutted, by proof of actual notice and concurrence in the fraud. See 3 *Kent's Comm.* 53. Hence it has been decided, that if actual notice of payment is proved, the indorsee before due is as capable of recovering on the note as the payee would be. *White* v. *Kibling*, 11 *Johns. Rep.* 128. Yet payment before due does not destroy the negotiability of the note, so as to prevent an innocent indorsee from recovering on it. *Burbridge* v. *Manners*, 3 *Campb.* 194. Any other equitable defence must stand on the same ground as payment. *Humphries* v. *Blight's Assignees*, 4 *Dall.* 370. If the assignee has notice, he is bound by it.

5. That the circumstance, that the plaintiffs received the transfer as security for an antecedent debt, does not strengthen their title. They had a right to take security; and the *Eagle Bank* had a right to give them a preference; but *not* by defrauding another. A creditor taking an assignment or conveyance for security of a debt, stands on no higher ground than any other purchaser.

*N. Smith* and *Hitchcock*, contra, insisted, 1. That the defence of usury is not sustainable. In the first place, the computation of interest or discount upon the principle of *Rowlett's* tables, is not usurious. This point has been so decided, on the circuit, at different times, by Judges *Chapman, Bristol, Daggett* and *Bissell.* Judge *Peters* has also expressed the same opinion in consultation. See 5 *Conn. Rep.* 567. And no contrary decision has ever been made, in any of our courts. Secondly, if it is, the confirming act of 1827, has deprived the defendant of this defence. That act is unquestionably applicable to this case; and it is too late to controvert its validity. *Goshen* v. *Stonington,* 4 *Conn. Rep.* 209. *Mather* v. *Chapman &* al. 6 *Conn. Rep.* 54. *Beach &* al. v. *Walker,* 6 *Conn. Rep.* 190.

2. That the *Eagle Bank* were under no obligation to receive payment, or to accept satisfaction in any form, of the note before it became payable; the time of payment being a part of the contract, and for the mutual benefit and convenience of both parties. *Chitt. Bills,* 338. n. *Ellis* v. *Cray &* al. 7 *Johns. Chan. Rep.* 7. *Abbe* v. *Goodwin,* 7 *Conn. Rep.* 377. *Burbridge* v. *Manners,* 3 *Campb.* 194.

3. That the offer of the defendant to pay the note, before it became due, did not destroy its *negotiable* quality; and it was legally passed to the plaintiffs. *Chitt. Bills,* 164. 167. *Charles &* al. v. *Marsden,* 1 *Taun.* 224. *Brown* v. *Mott,* 7 *Johns. Rep.* 361. *Haxtun &* al. v. *Bishop,* 3 *Wend.* 13. The case last cited goes the whole length of the present. In all the cases relied on, by the defendant's counsel, as analogous, there is an equity to have the note given up. The party has taken the note, knowing that it could not be enforced on account of some infirmity *in the note.* Here the difficulty arose solely from the state of the accounts between the original parties; with which the indorsee has no concern.

4. That *notice* to the plaintiffs of the defendant's offer to pay the note before it was due, and of the claim made by him, that it should be retained by the bank, to be set off when due, does not affect the plaintiffs. If the facts themselves vested no rights in the defendant, as has been shewn, it is difficult to see how notice of those facts could affect the plaintiffs. The frustration of a mere hope or expectation, where there is no vested right, does not constitute a fraud, either at law or in equity. The jury have found, that there was no actual fraud.

New-Haven,
July, 1831.

Savings Bank
v.
Bates.

BISSELL, J. The questions in this case arise upon the charge of the judge on the circuit ; and to this several exceptions have been taken.

1. It is contended, that upon the facts admitted in the case, the jury should have been charged, that the note in question was usurious.

It was admitted, on the trial, that the interest computed, or rather the discount deducted, on this note, was according to the interest tables of *Rowlett.* Whether this rendered the note usurious in its inception, is a question, which we do not feel called upon to decide ; as we are clearly of opinion, that the defence of usury , if any such exist d, is taken away by the statute of 1827. The enactments of this statute are positive and explicit, and forbid the court to entertain or adopt a plea of usury to bar this claim. The act validates all contracts made before its passage, wherein the interest has been calculated according to the standard laid down in these tables, provided such contracts were, in other respects, legal. And whatever may be our opinion, as to the policy of retrospective laws, the right of the legislature to enact such laws, has been too often recognized, by this Court, to be now drawn in question. *Goshen* v. *Stonington*, 4 *Conn. Rep.* 209. *Bridgeport* v. *Hubbell*, 5 *Conn. Rep.* 137.

2. It has been contended, that it was the right of the defendant to pay this note on the 2nd of *November*, and that the offer then made destroyed the negotiability of the note, as to all persons having knowledge of that offer.

It is too well settled to admit of dispute, that in regard to negotiable notes, the days of grace make a part of the original contract. Such a note, payable by the terms of it in 60 days, is in law a note payable in 63 days. Before the expiration of that time, no demand of payment can be made ; and if negotiated on the sixty-first or sixty-second day, it is not negotiated over-due.

The case, therefore, stands on the same ground as if the offer of payment had been made at any time before the note, by its terms, became due ; and the question comes to this : *Is it the privilege of the maker of a promissory note to pay it, before it comes to maturity ?* This question, as applicable to notes not negotiable, was expressly decided, in the case of *Abbe* v. *Goodwin*, 7 *Conn. Rep.* 377. The principle upon which that decision went, was, that a court of chancery had no power to substitute another contract for that which the parties had made.

This principle applies, surely, with equal, if not much greater force, to negotiable paper, than to a note not negotiable. For then the holder has the legal right to negotiate the note : and this may be much more beneficial to him, than to receive payment. The contract of the maker with the payee of a negotiable note, is virtually this : " You shall have the privilege to negotiate this note, at any time while it remains due, and I agree to make payment to the legal holder, when the. note comes to maturity." Is it in the power of the payee, by any act of his, to put an end to this contract? And can either a court of chancery, or a court of law, aid him in so doing? Would not this be going still further than was claimed in *Abbe* v. *Goodwin*, and still further varying the contract between the parties? If this view of the case be correct, it goes far to dispose of the only remaining objection which has been raised.

3. It is objected, that the offer of the *Eagle Bank* notes, on the second of *November*, and the notice then given, taken in connection with the insolvercy of the *Eagle Bank*, gave the defendant an equitable right of set-off, as against the bank ; and the plaintiffs having taken the note with notice, are affected by the same equity, and of course are not entitled to recover.

The jury have found, that the transfer of this note was not colourable, but made to secure a debt *bona fide* due to the plaintiffs from the *Eagle Bank*. In the case of *Catlin* v. *The Eagle Bank*, 6 *Conn. Rep.* 133. it was held, that the bank might, even after its insolvency, prefer one creditor to another ; and might appropriate its funds to pay and secure the claim of what might be considered a meritorious creditor. And this is all that has been done in the present case. This note was a part of the funds of the bank, and has been so applied. What should prevent this application? The parties to the note had certainly concurred in no act which could prevent it ; and the defendant alone could do no act which would have the effect of rescinding or varying his contract. What had he done to create equity in his favour? He had not paid his note, nor had he made a legal tender. He had taken in notes of the *Eagle Bank*, and for aught that appears, after its insolvency, and with a view to this payment ; and had given notice, that he meant so to apply them, when his own note became due. What foundation is here laid for the interference of a court of equity?

Suppose that the defendant had preferred his bill in chan-

*New-Haven,*
July, 1831.

SavingsBank
*v.*
Bates.

cery, stating all the facts found in this case, observing an entire silence as to the time when, and the object for which, he obtained these *Eagle Bank* notes, not averring, that he took them before the insolvency of the Bank, or in a course of circulation; would not the inference have been irresistable, that he had purchased in this depreciated paper, for less than its nominal value, and for the purpose of paying his own note? And would a court of chancery have interposed, by decreeing the note to be delivered up, or by enjoining against negotiating it, in aid of such a speculation? Would it not have been a sufficient answer to such an application, to say to the plaintiff; "You knew that your note was negotiable, and that this paper would be no payment of it, in the hands of a *bona fide* indorsee? You took the paper subject to that risk, and must abide the hazard." It ought further to be borne in mind, that a court of chancery could not have interfered, either by injunction or otherwise, without destroying the contract, entered into by the parties, and substituting another in its place. In support of such an interference no authority has been produced. The cases relied upon do not sustain the position; and I will only say, in the language of the court in *Abbe* v. *Goodwin:* "It will be in vain to search for authorities to that effect. None are shewn. It is opposed to the whole doctrine of contracts." Here then, was no equity, which attached to this note, in the hands of the plaintiffs, which should prevent a recovery by them. The motion for a new trial must be overruled.

HOSMER, Ch. J., was of the same opinion.

PETERS, J., being interested in the event of the suit, and DAGGETT and WILLIAMS, Js., having been of counsel in the cause, gave no opinion.

New trial not to be granted.(*a*)

(*a*) See note to *United Society* v. *Eagle Bank,* 7 *Conn. Rep.* 476.