THE DALTON CITY COMPANY, plaintiff in error, vs. J. A. W. JOHNSON, defendant in error.

1. Where the note sued upon contains no negotiable words, and is not indorsed or assigned by the payee, and the payee is not a party before the court, the title is involved as a part of the plaintiff's or complainant's case, no matter whether the defendant has a defense or not.

2. Section 2789 of the Code treats of notes in the hands of holders who are apparently regular holders according to the words of the instrument or some indorsement or assignment thereof, and does not signify that a stranger to a contract which is not payable to bearer, and not indorsed or assigned, may enforce it in his own name by reason of mere possession of the writing.

3. Where the complainant seeks to collect a note not negotiable, and not indorsed or assigned, and which has been paid or partly paid by the maker to the payee, and where the right to collect, notwithstanding such payment, is claimed to arise out of a special contract for a valuable consideration, the effect of which is to estop the maker from setting up payment as against the complainant, such special contract, to be available, must be alleged in the bill and proved as alleged.

4. The doctrine of estoppel by admissions is not applicable to the facts of this case.

Negotiable instruments. Title. Pleadings. Estoppel. Before Judge McCUTCHEN. Whitfield Superior Court. November Term, 1875.

The Dalton City Company filed its bill against J. A. W. Johnson, making, in brief, this case :

On or about August 18th, 1859, complainant, by a deed of trust entered into between it of the first part, certain trustees of the second part, and the Dalton and Gadsden Railroad Company of the third part, conveyed to said trustees certain lands in the city of Dalton, to create a fund to aid in the construction of the railroad from Dalton to Jacksonville, Alabama. On or about May 21st, 1860, said trustees sold a portion of said land to defendant, taking two notes therefor, each for $200 00, payable in five and eleven months, respectively, to the order of the Dalton and Gadsden Railroad Company. These notes should have been made payable to the order of the Trustees of the Dalton City Company's Real Estate Trust Fund, but by mistake or oversight were made payable as aforesaid. The name of said railroad company was subsequently changed to that of the Dalton and Jacksonville Railroad Company. By an agreement made between said railroad company and complainant, on July 20th, 1866, and by a deed from the trustees of said real estate trust fund, of date November 9th, 1866, said trust was terminated, and said lands, excepting such parts as had been sold, were reconveyed to complainant, and the two notes aforesaid were delivered by the railroad company to the complainant, to be collected for the use of the latter. These notes, with the interest thereon, are still due and unpaid, and should constitute a lien on the lots for which they were given. Complainant, therefore, prays as follows : 1st. That it may have judgment against said defendant for the amount of said notes, with interest. 2d. That it may have its lien on said lots for the amount of said purchase money, with interest. 3d. That it may have general relief and the process of subpœna.

The defendant, in his answer, states that he agreed to pay for said lots $800 00, one-half cash and the balance on time; that the two notes, as set forth in the bill, represent the time payment. Denies most emphatically the mistake or oversight alleged to have been made in the payee of the notes.

Denies that the notes are unpaid, and asserts that before the first became due, he, at the instance of the officers of the railroad company, paid off a note given by said company to George Wadsworth, or bearer, for $491 83, with a credit thereon of $153 00, and under an agreement that he was to be credited with the amount advanced by him on his notes. He alleges that complainant is indebted to respondent for professional services as an attorney, in the sum of $265 50, besides interest, for which he prays judgment.

The evidence, so far as material, will be found stated in the opinion.

The jury found for the complainant $137 54. The defendant moved for a new trial upon the following, among other grounds:

1st. Because the court erred in charging the jury as follows: "The title of the holder of a note cannot be inquired into unless it is necessary to the protection of the defendant, or to let in the defense which he seeks to make."

2d. Because the verdict is contrary to the following portion of the charge: "Complainant insists that the defendant, by his conduct, is estopped from proving that the notes were paid; that the conduct and admissions of the defendant misled it to its injury. If you find this to be the fact, under the law the court will give you, then you should find for complainant so far as the issue of payment in concerned. Before this estoppel can be set up, you must find that the conduct and admissions of the defendant have misled complainant, and that it has thereby been injured. Complainant must have acted on the conduct and admissions of defendant in some way, by which it has been injured, and unless it appears to you, from the evidence, that it is so injured, defendant would not be estopped from proving the payment of the notes sued on. Admissions upon which other parties have acted, either to their own injury, or to the benefit of the person making the admissions, and which admissions were acted upon, constitute an estoppel."

3d. Because the court erred in its charge as set forth in the preceding ground.

The motion was overruled and the defendant excepted.

W. K. MOORE; JOHNSON & McCAMY, for plaintiff in error.

D. A. WALKER, by brief, for defendant.

BLECKLEY, Judge.

1, 2. Though the case be in equity, the complainant, as a general rule, must have title, or the person in whom the title is vested must be a party : 2 Leading Cases in Equity, Part 2, page 242; 2 *Kelly*, 424; 3 *Ibid.*, 161; 1 *Ibid.*, 236; 10 *Georgia Reports*, 329. Under the Code, all *choses* in action arising upon contract are assignable : Code, section 2244. Are the notes set forth in this bill available to the Dalton City Company, in an action brought in its own name, against the debtor ? The answer to this question depends, first, upon whether the notes are payable to that company; second, whether, if they are not, they contain words rendering them negotiable without being indorsed or assigned ; and, third, whether, supposing it to be necessary, any indorsement or assignment appears. On their face, the note are payable, not to the Dalton City Company, but to the Dalton and Gadsden Railroad Company. As we understand the record, they came into existence thus : The city company conveyed land to certain trustees, in trust for the railroad company. For a part of this land, sold by the trustees, the notes were given. The bill alleges that they were made payable to the railroad company by mistake, the intention having been to make them payable to the trustees; but the allegation is unsupported by any evidence, and is directly contradicted by the answer. Suppose, however, that the allegation were proved, it would not put title, either legal or equitable, into the city company, the complainant. The trust, we may infer, in the absence of anything showing to the contrary, was not for the benefit of

that company, but for the benefit of the railroad company. So that if the notes had been made payable to the trustees, the complainant would still have been a stranger to them. The notes contain no negotiable words, and they are not indorsed. Neither does any assignment of them appear, unless it can be collected from one or both of two certain writings set out in the evidence, embracing terms of settlement, or partial settlement, between the two companies. The first of these writings provided, expressly, that the complainant was to have railroad stock for all the lands which had been sold. These notes then existed, and the land for which they were given had, of course, then been sold. There is no intimation that there was any purpose to pay the complainant twice for this particular portion of the land, once in railroad stock and again in the notes covering the price. But the stipulation to pay in railroad stock is unmistakable. It follows, we think, that the writing containing that stipulation cannot be construed as an assignment of these notes. Certainly, the notes are nowhere mentioned in it. The second of the two writings neither identifies them as the property of the complainant, nor assigns them. That writing was executed after all the trustees had signed a deed conveying to the maker of these particular notes the land for which they were given. So, we think, the record is to be understood. But be this comparison of dates correct or not, to what extent does the second writing deal with notes given for land? It provides that the complainant is to convey land to the holders of bonds for title as fast as the notes are paid. None of the notes are specified or described, nor is it said to whom they are to be paid. Why should they not be paid to the payee, that is, to the railroad company? There surely is no inconsistency between what is stipulated and leaving the ownership of the notes in that company; more especially, when it is remembered that, by the previous instrument, it was settled that the complainant was to have for the land which had then been sold, not money or notes, but railroad stock. We do not find in either of the two writings, or in both together, any assign-

ment, express or implied, of the notes involved in the present cause.

3. There is evidence in the record tending to show that the notes were paid, or partially paid, while they were in the hands of the railroad company. There is also evidence, on the part of the complainant, tending to show a contract between the complainant and the defendant, by which the latter undertook to pay the notes to the former, receiving for the undertaking a valuable consideration. This transaction between the parties themselves is said to be sufficient to estop the defendant from taking the benefit, as against the complainant, of any payment which had before been made to the railroad company. The suggestion is, that having recognized the notes as subsisting debts, and having, as a consequence of that recognition, obtained the complainant's money, the defendant cannot now be heard to say that the notes were previously extinguished, in whole or in part. It is further suggested that the want of any assignment of the notes from the payee to the complainant, is supplied by this direct undertaking of the defendant to pay them to the complainant. The two-fold purpose of cutting off the defense of payment (which is set up in the answer) and of excluding all question of the complainant's title to the notes, is thus said to be accomplished. But neither the contract nor the consideration for it is alleged in the bill. The bill is a suit upon the notes, and not upon the contract with the complainant to pay them: 10 *Georgia Reports*, 329.

4. There is certainly a well established doctrine in the law that admissions acted upon in acquiring *choses* in action will estop the debtor from setting up prior payment: 2 Leading Cases in Equity, Part 2, page 237. But the present case is not one to which the doctrine applies, for both the instruments examined under the first head of this opinion were executed before the debtor made any admission to the complainant in respect to these notes. If these instruments were sufficient to pass title to the notes into the complainant, the complainant already had title when the alleged admissions

were made. If they were not sufficient (and we have seen they were not) then the evidence fails to show any purchase of the notes by the complainant, either before or after the making of the admissions. The very truth of the matter is, that we are unable to discover from the record when or how the notes became the complainant's property.

Judgment reversed.