THE WESTERN NATIONAL BANK OF NEW YORK *v.* THE MAVERICK NATIONAL BANK OF BOSTON.

Where a mortgage upon realty is given for securing several negotiable promissory notes, some of which notes are negotiated by the mortgagee before maturity and others are retained by him, and after the maturity of all the notes the mortgagee in his own name, and without ever having made any assignment of the mortgage or any interest therein, forecloses for the whole amount of the notes so transferred and retained, and afterwards assigns the judgment of foreclosure to one of his creditors who, besides

extinguishing his antecedent debt against the mortgagee, pays the latter a large sum in cash, the debt and the cash together being the consideration of the assignment, the assignee, if he takes the assignment without any notice of the transfer of the notes or that the transferee had any interest in the mortgage security or in the judgment of foreclosure, acquires the title to the judgment unaffected by the secret equity of the transferee, and the latter cannot recover from the assignee any part of the proceeds of such judgment after the judgment has been paid off by the mortgagor. The equities protected by section 3597 of the code, irrespective of notice, are equities between the parties to the judgment, and not those in favor of strangers to the judgment, as to whose names and interest the record is silent.

August 1, 1892.

Assignment of judgment. Fraud. *Bona fides.* Notice. Promissory note. Title. Equity. Before Judge HARRIS. Troup superior court. November term, 1891.

N. J. HAMMOND & SON and R. A. S. FREEMAN, for plaintiff in error.

F. M. LONGLEY & SON and P. H. BREWSTER, *contra.*

SIMMONS, Justice.

The Maverick National Bank of Boston recovered against Huguley & Co. and the Western National Bank of New York, upon the following state of facts:

Certain promissory notes of the Alabama & Georgia Manufacturing Company to Huguley & Co., amounting in the aggregate to $15,000, were delivered by the latter to the plaintiff, before maturity, as security for a debt of $5,000 and interest. To secure these notes and others not transferred to the plaintiff, the maker of the notes had given to Huguley & Co. a mortgage on certain real estate, but no assignment of this mortgage or of any interest in it was made to the plaintiff. After all the notes had matured, Huguley & Co., in their own name, foreclosed the mortgage for the entire indebtedness which it had been given to secure, having first gotten back the transferred notes, after maturity, from the transferee, under an agreement with the latter to hold them

" in trust to be exhibited in court " in the foreclosure pro-
ceeding and to return them immediately thereafter.
Without the knowledge or consent of the transferee of
the notes, Huguley & Co. assigned the judgment of fore-
closure to the Western National Bank of New York,
the consideration of the assignment being the ex-
tinguishment by the assignee of its antecedent debt
against them and the payment of a large sum in cash.
Afterwards at a receiver's sale of all the property of the
mortgagor, the assignee of the judgment, together with
other persons who were joined as defendants in this
case, purchased the property, and the amount of the
judgment was credited by the receiver as part payment
of the purchase money.  The plaintiff, in its petition,
claimed that it was legally and equitably entitled to fol-
low into the property thus purchased the collateral
which it alleged had been fraudulently taken from it,
and it prayed for a money decree against the defendants
for the amount of the indebtedness to secure which the
collateral had been given, or if all the defendants were
not parties to the fraud, then against such only as had
participated in it.   Huguley & Co. filed no defence, but
the Western National Bank answered, and in its answer
set up that the assignment of the judgment had been
taken by it in good faith, without notice of the transfer
of the notes in question to the plaintiff, or that the
plaintiff had any interest in the mortage security or in
the judgment of foreclosure.  On the trial there was
evidence tending to establish this defence.  The verdict
was for the full amount sued for, and the Western Na-
tional Bank made a motion for a new trial, which was
overruled, and it excepted.

The grounds of exception mainly relied upon are
based upon the failure of the court below to charge
the jury as to the defence of good faith and want of
notice on the part of the assignee of the judgment.   In

this we think the court erred. We think, if the assignee took the judgment in good faith and without notice of the plaintiff's equity, the title was taken free from that equity. It was contended in behalf of the defendant in error that the doctrine *caveat emptor* applies to the purchaser of a judgment, not only as to the equities of the debtor, but as to all equities which at the time of the transfer exist against the judgment in the hands of the assignor; and in support of this view the following authorities are cited: Davies *v.* Austin, 1 Ves. 247; Cockell *v.* Taylor, 15 Eng. L. & Eq. 101; Bush *v.* Lathrop, 22 N. Y. 535; Sheldon *v.* Edwards, 35 N. Y. 279; Schafer *v.* Riley, 50 N. Y. 61; Clark *v.* Hogeman, 13 W. Va. 718; Downer *v.* Bank, 39 Vt. 25; Cox *v.* Palmer, 60 Miss. 793; Mitchell *v.* Hackett, 25 Cal. 538; 2 Pomeroy, Eq. Jur. §703 *et seq.* On the other hand, numerous decisions are cited to the effect that the assignee is not affected by the latent equities of third persons, not parties to the judgment, of which he had no notice at the time of the assignment. Mr. Black in his work on Judgments states that this is "the generally recognized doctrine." (Vol. 2, §956, ed. 1891.) To the same effect see 2 Freeman on Judgments, §428, and cases cited (ed. 1892); 12 Am. & Eng. Enc. L. 149(c), and notes. We have found no decision of this court which deals with the exact question here presented. Under our statutes, however, we think the question is free from difficulty. An examination of the cases cited for the defendant in error will show that there is a fundamental difference between all of them and the case before us. Under our statutes, the legal title to choses in action is assignable, and judgments "are negotiable by indorsement or written assignment in the same manner as bills of exchange and promissory notes." Code, §§2776, 2244, 3597. In those cases the chose in action was non-negotiable and the legal title was not assigned. Under the common

law, choses in action, except negotiable securities, could not be assigned so as to carry the legal title; and in a court of law, any rights in them acquired by other persons than the owner could be enforced only in his name. Hence the rule laid down by Lord Chancellor Thurlow in Davies v. Austin, *supra*, that "a purchaser of a chose in action must always abide by the case of the person from whom he buys." As a transfer could convey only an equitable interest, courts of equity, in sustaining as against the transferee the equities of third persons which prior to the transfer had attached to the chose in action in the hands of the legal owner, were governed by the maxim *prior in tempore potior in jure*. But this rule of priority, while applicable in a contest between merely equitable interests, of course does not apply in favor of a latent equity as against a purchaser who in good faith has become vested with the legal title. It will be found that the non-negotiable or non-assignable character of the chose in action is the basis of all those decisions which have extended the doctrine *caveat emptor* to the equities of third persons against the assignor. Still, even in the absence of statutes placing the chose in action upon a different footing as to assignability from that occupied at common law, many decisions have followed the view announced by Chancellor Kent in Murray v. Lylburn, 2 Johns. Ch. 442, that the rule which subjects the assignee to the equities which attached to the chose in action in the hands of the assignor, is to be understood as meaning the equity residing in the original obligor or debtor, and not an equity residing in some third person against the assignor. Chancellor Kent, in stating the reasons for this view, says: "The assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain

the latent equity of some third person against the obligee.  He has not any object to which he can direct his inquiries ; and for this reason, the claim of the assignee without notice, of a chose in action, was preferred in the late case of Redfearn *v.* Ferrier and others, 1 Dow. Rep. 50, to that of a third person setting up a secret equity against the assignor.  Lord Eldon observed in that case that if it were not to be so, no assignments could ever be taken with safety."  Whatever may be the force of this reasoning as applied to a merely equitable assignment, there can be no question as to its soundness in the case of a legal assignment, especially where the chose in action is of a negotiable character.  The objection of Mr. Pomeroy to the doctrine of Murray *v.* Lylburn, *supra,* is based upon the ground that "it is, in effect, an extension of the peculiar qualities of negotiable instruments to things in action not negotiable."  (2 Eq. Juris. §708, ed. 1892.)  Our code, it is true, does not render judgments negotiable in the strict sense, so as to place them on the high commercial plane occupied by negotiable paper under the law merchant (*Heyward* v. *Finney,* 63 *Ga.* 354), but they are rendered negotiable in the sense in which, for example, bills of lading and some other documents are called negotiable, and are of course placed upon a footing altogether different from that occupied by a non-negotiable chose in action.  It will be seen, therefore, that the authorities referred to by counsel for the defendant in error do not conflict with our holding in this case.

Looking further to the language of the code, we find that section 2244, in which all choses in action are declared to be assignable, although it protects the equities of the debtor, makes no provision as to the equities of third persons.  It says: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities,

subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." It was contended, however, that section 3597, which relates to the transfer of judgments and executions, should be construed as subjecting the transferee to *all* equities against the original plaintiff, and not merely to those of parties to the record. The language of that section is as follows: "Any plaintiff or transferee may *bona fide* and for a valuable consideration transfer any judgment or execution to a third person, and in all cases the transferee of any judgment or execution shall have the same rights and be liable to the same equities and subject to the same defences as the original plaintiff in judgment was." It was argued that the phrase "subject to the same defences" covers all matters that could be set up in favor of the defendant, and that the phrase "liable to the same equities" would therefore be useless unless meant to cover the equities of other persons than the defendant. It should be borne in mind, however, that when this section was incorporated into the code, the defendant was not obliged to assert all his defences against a judgment by way of defence, but could use his equities otherwise than defensively; and the code meant to leave him free to exercise this option still. It is probable that for this purpose, as well as to make explicit the intention that the transferee should take subject to the assertion of equitable as well as legal reasons for non-payment, both phrases were used. Moreover, this language must be so construed as to harmonize with the general intent of the section to which it belongs and of other sections cited which relate to the same subject; and it is plain that a construction which would subject the transferee to the secret equities of persons claiming an interest in the judgment, as to whose names and interest the record is silent, would not only be at variance with the princi-

ples of equity, which protect the *bona fide* purchaser of a legal title, but would defeat the object of the law in providing for the assignment of choses in action, and especially in rendering negotiable this class of choses in action. The object was to render more available for commercial purposes a species of property the title to which was formerly incapable of legal transfer; and clearly this purpose would fail if the purchaser were deprived of the protection against secret equities afforded to the *bona fide* purchasers of other kinds of property. To hold the purchaser subject to equities the existence of which he has no reason to suspect and which the utmost diligence might not enable him to ascertain, would be altogether inconsistent with the idea of negotiability or even of *quasi*-negotiability. If such were the law no purchaser could feel safe in buying this species of property. We are satisfied, therefore, that the equities protected by the section last quoted, irrespective of notice, are those between the parties to the judgment, and not those in favor of strangers. In the present case, as we have seen, the legal title to the judgment was in the assignors, and although as to a part of the claim represented by the judgment they were trustees, their trust character did not appear from the record, and there was nothing in the record to put the purchaser upon notice of any rights of the *cestui que trust*. If, therefore, the purchase was made in good faith and without notice, the assignee was protected against the secret equity of the *cestui que trust*. The court below having failed to charge the jury in accordance with this view of the law, the plaintiff in error is entitled to a new trial.                                      *Judgment reversed.*