## HAUG v. RILEY, administrator.

1. It is, on the trial of an action upon a promissory note, after showing the loss or destruction thereof, competent to prove by parol that a paper attached as an exhibit to the plaintiff's declaration is a true and correct copy of the lost original. In the present case the court properly allowed proof of the contents of the instrument declared upon, over objection that the same was not, and had never been, "an office paper," and that the alleged copy thereof showed "only one credit of $60.00, while the allegations in the declaration admitted and allowed four credits amounting to $140.00."

2. The endorsee of a negotiable promissory note has a right, as the legal holder thereof, to institute a suit thereon in his own name, notwithstanding the fact that before bringing his action he had, by a written assignment, not endorsed on the note itself but on a separate paper, transferred the note to another as collateral security, who subsequently surrendered the note to him merely for the purpose of collection; and nothing more appearing, the plaintiff will be entitled to recover.

3. A negotiable promissory note, payable at bank, does not become due until the last day of grace; and one to whom such an instrument is en-

dorsed and transferred on the second day of grace takes the same before maturity, and will be presumed to have been a bona fide purchaser for value.

4. Even where such a note is, before maturity, actually paid by the maker to the payee, and by the former again put in circulation, as against one signing apparently as a joint principal, but who is in fact a surety only, such a purchaser will nevertheless be protected.

5. In view of the evidence submitted on the trial of the present case, a verdict for the plaintiff was the only legal result which could have been reached, and the court did not err in directing the jury to find in his favor.

Argued April 16, — Decided June 10, 1897.

Complaint on note.   Before Judge Hart.   Baldwin superior court.   January term, 1896.

*D. B. Sanford* and *Whitfield & Allen,* for plaintiff in error.

*Roberts & Pottle* and *J. D. Howard,* contra.

LUMPKIN, P. J.   Suit was brought in the court below against Robert Whitfield and F. Haug upon a promissory note signed by them as joint makers.   The court directed a verdict in favor of the plaintiff, and Haug brings the case here for review.   As his codefendant filed no defense to the action, and is not a party to the present writ of error, we shall, for convenience, deal with the case as though the plaintiff in error was the only party defendant in the lower court.

1. Complaint is made that the court, over the defendant's objection, allowed the plaintiff "to establish a copy of the note sued, in lieu of the alleged lost original, by oral testimony, . . said original note not being, or having ever been, an office paper, and the note so allowed to be established showing only one credit of $60.00, while the allegations in the declaration admitted and allowed four credits amounting to $140.00."

As to the first ground of objection urged, the law in this State is well settled.   "A party is not obliged to establish a lost paper under the judiciary act, but may, by showing its loss or destruction, as in this case, give in secondary evidence of its contents, and, upon sufficient proof, recover on it as a lost or destroyed paper."   *Lindsay* v. *Kendrick & Co.,* 30 *Ga.* 546, citing *Ross & Co.* v. *Wright,* 12 *Ga.* 509.   "A lost note may be sued upon without taking steps to establish a copy; the Code, §3986 [Civil Code, §4750], being permissive or cumulative,

not mandatory or exclusive. 42 *Ga.* 462. The loss of the note while suit upon it was pending did not render the establishment of a copy indispensable in order for the suit to proceed." *Jernigan* v. *Carter*, 60 *Ga.* 133. "The genuineness of the original, and the correctness" of a copy thereof attached as an exhibit to the plaintiff's petition, "may be established by parol evidence." Ibid. 131. And "on proof of loss of the original agreement, and the correctness of a copy, the copy may go to the jury as evidence." *Goodman* v. *Henderson*, 58 *Ga.* 567.

Nor is there any merit in the objection that the paper which the plaintiff was allowed to introduce in evidence, upon proof that it was a correct copy of the lost original, showed only one credit, whereas "the allegations in the declaration admitted and allowed four credits." A plaintiff may very properly admit more payments than are actually entered upon the instrument on which he brings his action. This apparently is what was done in the present case; for, although the exhibit attached to the plaintiff's petition showed only one credit, it was nevertheless, according to the undisputed evidence, a true and correct copy of the lost original. This copy was simply used as evidence to show the basis of the plaintiff's cause of action; and the amount claimed and recovered was, not that which on the face of the instrument purported to be due, but only that which was sued for.

2. As originally brought, this was a suit instituted by M. W. Hall, to whom the original note in question had been transferred by proper endorsement. He having died before the trial, the case was prosecuted by his administrator. It appears from the evidence that, prior to bringing his action, Hall had assigned this note to Mrs. Brake as collateral security, the assignment being written on "a paper other than the note" itself; and that subsequently the note had been returned to him, he executing and delivering to Mrs. Brake a receipt in the following words: "Received of M. L. Brake note signed by F. Haug and Robert Whitfield, for collection, said note being transferred by myself to said M. L. Brake to secure my note given said Brake for $320.00, and due May 1, 1892." A motion was made in the court below to dismiss the plaintiff's action, on the

ground "that the legal title to the alleged lost original note was in" Mrs. Brake "when said action was brought and filed"; and the overruling of this motion is here assigned as error.

As a matter of course, if it be true that the legal title to the note was not in Hall at the time he instituted his action, this would constitute an insuperable obstacle to the prosecution of his suit, and the defendant's motion should have been sustained. For one who is a mere stranger to the legal title, albeit he may have possession of the instrument upon which suit is brought, can not maintain an action thereon against the maker. *Dalton City Co.* v. *Johnson*, 57 *Ga.* 398. In the present case, however, it unequivocally appeared that the instrument sued on was expressly made payable "to order," and was regularly endorsed to Hall; so he certainly can not be regarded as a stranger to the note. On the contrary, so far as the instrument itself furnishes evidence as to its ownership, title thereto passed into Hall and remained in him as the last endorsee, no endorsement by him to Mrs. Brake, or to any one else, appearing either upon the back or upon the face of the note. It is claimed, nevertheless, that Mrs. Brake became the holder of the legal title by reason of the assignment to her above mentioned.

Tested by the familiar and universally recognized rules of the law merchant, this contention is not well founded. The note being payable "to order," mere delivery of it to Mrs. Brake certainly would not pass the legal title. Nor would a mere assignment thereof, evidenced by another and entirely distinct instrument in writing, have that effect. For "where a bill or note payable 'to order' is transferred without endorsement, the transferee does not acquire the legal, but only the equitable title." 1 Dan. Neg. In. § 741. Endorsement is the only method by which the *legal* title to such an instrument can be transferred. Ibid. § 664 a. True, it may be transferred without endorsement; "but in such case the assignment is not in the usual course of business, in accordance with mercantile custom, only the equitable title passing to the assignee." Ibid. § 729. And to the same effect, see 4 Am. & Eng. Enc. of Law (2d ed.), 255, 257, citing numerous cases both English and American; Norton on Bills and Notes, 94,

155. "The endorsement must be written on the instrument transferred,"—"must be somewhere on the instrument." See authorities last cited. Of course, if necessary or convenient, another slip of paper, "generally called by the French name *allonge*," may be annexed to the instrument, on which subsequent endorsements may be written, which will have the same effect as if written upon the instrument itself, such paper being deemed a part thereof. Ibid.; Wood's Byles on Bills and Notes, 152. But a written transfer upon another and entirely distinct instrument is not permissible, and will not have the effect of passing the legal title to a note or bill expressly made payable "to order." French *v*. Turner, 15 Ind. 59; Doll *v*. Hollenbeck, 19 Neb. 639, 641. The fact that the maker expressly stipulates that he shall be called upon to pay none other than one to whom the instrument is transferred by regular endorsement, should answer as furnishing a sufficient reason upon which this rule may rest. Norton on Bills and Notes, 156. Another and equally important reason may, however, be given. It is indispensably necessary, if such instruments are to fulfil the object for which they were designed, that they should carry with them the indicia by which their ownership is to be determined; otherwise, their value as a circulating medium would be largely curtailed, if not entirely destroyed. Adding an *allonge*, when necessary or convenient, is permissible only because furthering the object of their creation, viz.: free and unrestrained negotiability. This is, and can be, the only exception to the rule that the endorsement, to pass the legal title, must be entered upon the instrument itself. If this rule were so relaxed as to admit of transfer evidenced by an independent slip of paper, unattached to and forming no part of the instrument, the sole purpose it was intended to subserve would be defeated; for it would necessarily lose one of the most essential characteristics of "negotiable" paper, in the ordinary and technical sense of that term, and would stand upon practically no better footing, as a circulating medium, than strictly "non-negotiable" choses in action.

We believe the rule which obtains in this State is strictly in accord with what is immediately above announced. The only

embarrassment with which we have met, in arriving at our conclusion in the present case, is some of the reasoning employed by Mr. Justice Speer in delivering the opinion of this court in *Adams* v. *Robinson*, 69 *Ga.* 627. The facts of that case were, in brief, as follows: The instrument sued on was a draft, payable "to the order of B. H. Robinson," drawn upon D. C. Adams by F. E. Grist, agent, and duly accepted. This draft was, for value and before due, transferred to Jones & Singleterry "by an assignment in writing in a separate paper," but was not endorsed to them. The suit proceeded in the name of Robinson for their use. The defendant sought to set up the defense that the draft was delivered to Robinson, through his agent, under an express agreement in writing that it was to be deemed void, and was to be returned, upon a certain contingency, which had subsequently happened. To this defense the plaintiff interposed the objection that the instrument was on its face negotiable, and had been regularly transferred to his usees, Jones & Singleterry, before maturity and for value, who took the paper without notice of the stipulation upon which the defendant relied as a defense. Dealing with the question thus presented, this court held, (1) that the instrument was negotiable; (2) that "while the ordinary mode of transferring a negotiable instrument, payable to order, is for the payee to endorse it, an assignment thereof by the payee on a separate paper is good, and passes title to the assignee for value, before due, and without notice of any equities between the parties, free from them"; and (3) that "such assignees could sue on the paper in their own names, but if they saw fit to sue in the name of the payee for their use, it did not render them subject to the equities between the payee and maker." In view of our conclusion, the reasons for which we shall presently state, that this decision is not authoritative upon our present question, we feel at liberty to comment upon it somewhat freely, and to point out wherein we think it can not stand the test of close scrutiny.

In the first place, if the second proposition announced therein be sound, that which follows would seem to be a palpable non sequitur, in so far as it is susceptible of the con-

struction being placed upon it, as we think was intended, that notwithstanding the legal title to the instrument was in the parties named as usees, and had passed completely out of the plaintiff, he could nevertheless maintain his action.    It would, indeed, lead to a most remarkable state of affairs if one who had entirely parted with all interest, legal and equitable, in a chose in action were allowed to subsequently come into court, in the role of an intermeddler and volunteer, and maintain an action, in his own name and based upon his own right, for the use of the holder of the legal title.    But we can not assent to the soundness of the court's second proposition in the *Robinson* case.    The only authority relied upon in support of the holding that the assignment then under consideration passed the legal title, was section 2244 of the Code of 1882 (§ 3077 of the new Civil Code), declaring that: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable."    The object and meaning of this section can readily and clearly be ascertained by applying the old and well-known rule of construction laid down in section 9 of the Political Code, viz.: "In all interpretations, the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil, and the remedy."    What, then, was "the old law" when the section to be construed was, by legislative sanction and direction, incorporated into the first code of this State?    The answer is, that which we had borrowed from England, familiarly known as "the law merchant."    Nothing is better settled than that, "under the common law, choses in action, except negotiable securities, could not be assigned so as to carry the legal title; and in a court of law, any rights in them acquired by other persons than the owner could be enforced only in his name."    *Western Bank* v. *Maverick Bank*, 90 *Ga.* 342, 343.    This was the "evil" to be corrected.    As is clearly indicated by the language employed, the "remedy" adopted was to declare that an assignment of a

chose in action should operate to "vest the title in the assignee," in order simply that he might accordingly have the right to sue in his own name, it being further distinctly provided that "he takes it, except negotiable securities, subject to the equities existing between the assignor and debtor," etc. Obviously, the only reason for mentioning "negotiable securities" at all was to negative any possible inference which might be drawn from the use of the general words, "all choses in action arising upon contract," that the section was intended in any manner to affect the status of such securities. The correctness of this view is made apparent by what is said by the Supreme Court of Nebraska, in Doll v. Hollenbeck, supra, when construing a similar section of the code of that State. In summing up, Cobb, J., says: "The object of the enactment of the 29th and 30th sections of the code was to do away with the necessity of uses and trusts, in the matter of bringing and prosecuting actions at law; and the object of the 31st section [providing that: "In the case of the assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense now allowed; but this section shall not apply to negotiable bonds, promissory notes, or bills of exchange, transferred in good faith and upon good consideration before due"] was to prevent such change in the practice affecting injuriously the rights of defendants. But as the rule which was thus being changed never had any applicability to *negotiable* paper, the latter clause of said section was added *ex majori cautela*, lest the language of the first clause might be construed to change the existing law applicable to such securities."

It is further to be observed that the section of our code with which we are now dealing does not undertake to prescribe the *manner* in which choses in action "may be assigned so as to vest the title," its object, as has just been seen, being merely to declare generally, by way of correcting the evil in "the old law," that they *could* be legally so assigned. The term "assigned," in this connection, is used in the sense of "transferred." Indeed, in its ordinary acceptation, the word "assign" means: "to transfer to another. It is the appropriate word for a trans-

fer of personal property, and particularly for a transfer of rights
in action." 1 Abbott's Law Dict. 95. In other words, this
section leaves the method of transfer to be determined accord-
ing to the law governing this matter theretofore existing. Sec-
tion 3681 of the Civil Code (the provisions of which were incor-
porated into the first code simultaneously with those of the sec-
tion now under review, and are therefore to be read in pari
materia with the latter section) distinctly provides that the
manner of transferring the legal title to a negotiable instru-
ment not payable to bearer is by endorsement. "As the deri-
vation of the word would indicate, an endorsement is properly
written upon the back of an instrument, and this is the ordi-
nary mode in which an endorsement is made." Yet it is now
well settled that it "may be made on the face of the instrument
with the same effect as if made upon the back, if such is the
intent of the endorser." The rule is imperative, however, that
"the endorsement must be written on the instrument trans-
ferred." See 4 Am. & Eng. Enc. of Law (2d ed.), p. 259.
This was the law when the legislature, upon its adoption of
the first code, undertook to effect a change in the law regard-
ing the assignability of non-negotiable choses in action, but to
leave negotiable securities upon the same footing as that upon
which they had always stood.

In order to bring about the desired change in "the old law,"
the General Assembly might have provided in general terms
that "the real party at interest" should have a right to main-
tain an action in his own name, regardless of the question
whether the legal title was or was not in him. But this was
not the "remedy" adopted. On the contrary, it was doubtless
thought advisable not to disturb the time-honored rule that
none save the holder of the legal title could prosecute his ac-
tion; and to that end, it was in effect provided that a regular
assignment, in conformity to established custom, *should* oper-
ate to pass the legal title, and thus enable the assignee to main-
tain a suit in his own name. That this is true is evidenced by
numerous decisions of this court giving effect to the legisla-
tive intent in adopting the section under discussion. Thus, in
the recent case of *Hartford Insurance Co.* v. *Amos,* 98 *Ga.* 534,

which cites previous decisions made by this court, it was said:
"If the assignment is not in writing, the assignee can not bring
an action thereon in his own name, but must necessarily use
the name of the assignor, as suing for his use." To the same
effect, see, also, *Foster* v. *McGuire & Dillard*, 96 *Ga.* 447. This
was the rule applied in *Cochran* v. *Strong*, 44 *Ga.* 636, where-
in it was held that where a non-negotiable "instrument is as-
signed to A who, in turn, assigns it to B, and, by some means,
it again comes into the hands of A, he can not sue on it in his
own name for use of last assignee." On the other hand, it is
no defense to an action by the holder of the legal title that he
has no pecuniary interest in the suit. *Houser* v. *Houser &
Bronson*, 43 *Ga.* 415; *Greer* v. *Woolfolk*, 60 *Ga.* 623. The
question of title is to be determined "according to the words
of the instrument or some endorsement or assignment thereof,"
and a mere "stranger to a contract which is not payable to
bearer, and not endorsed or assigned, [can not] enforce it in
his own name by reason of mere possession of the writing."
*Dalton City Co.* v. *Johnson*, supra. "Where a note, draft or
check is made payable to order, the endorsement of the payee
is necessary to transfer the legal title to another." *Farris* v.
*Wells*, 68 *Ga.* 604. There the plaintiff brought suit upon two
bank-checks, drawn by the defendant on a named bank, "paya-
ble to his own order, but not endorsed." The case was dis-
missed on demurrer in the court below, and, in affirming the
judgment, this court said: "We know of no exception to the
rule that where an instrument is made payable to order, the
endorsement of the payee is necessary to transfer the legal title
to another."

All of the cases last above cited were decided prior to that
of *Adams* v. *Robinson*, and as the decision in the latter case
would seem to be in the very teeth of the law as previously
announced, if any regard is to be paid to the principle upon
which all of these former cases rest, there is at least strong
reason for doubting whether *Adams* v. *Robinson* is to be con-
sidered authoritative. Certainly, the doctrine it lays down has
not been followed, so far at least as it disregards the rule of
law that none other than the holder of the legal title can bring

his action. Thus in *Benson* v. *Abbott, Parker & Co.*, 95 *Ga.* 69, it was held that where a promissory note, payable to order, was transferred by delivery to another, "but by mistake or inadvertence the note was not endorsed or otherwise transferred in writing," the transferee took only an equitable title, and suit could be brought only in the name of the payee, in his right and subject to all defenses which could be urged against him by the maker. In *National Bank of Columbus* v. *Leonard*, 91 *Ga.* 805, it appeared that "at the time a promissory note was endorsed in blank, another between the same parties was folded in it," and both delivered to the bank, which, upon non-payment of the notes, brought suit thereon in its own name. It was accordingly held that the endorsement written upon the note first above mentioned "did not operate as an endorsement or to more than an equitable assignment of the" other note, "although such may have been the intention of the parties," and that consequently the bank "could not maintain a suit upon the latter in [its] own name without equitable pleadings setting up the requisite facts."

As the law in positive and unequivocal terms declares endorsement to be the method by which a transfer of the legal title to a promissory note payable "to order" shall be evidenced, it would seem that nothing short of strict compliance with this plain mandate can operate to effect such a result. Were realty sought to be transferred by a mere scratch of the pen, or in any less formal manner than the law prescribes, it would not for a moment be doubted that the legal title could not be deemed to have passed, no matter what may have been the intention of the parties; the test being, not what the parties intended to do, but whether they have complied with the requirements of the law. Is there any good reason for assuming that, although the law is imperative in regard to the mode of transferring title to real property, it does not mean what it says when it in no less positive and unequivocal terms declares what shall be the manner in which the legal title to a particular kind of personal property may be transferred?

Although the reasoning employed in *Adams* v. *Robinson* seems anything but satisfactory, and conflicts with the views

herein expressed, the decision in that case may nevertheless stand with what is now decided. It is not authority for the proposition that a regular endorsee of a negotiable promissory note payable to order, who is apparently the holder of the legal title, can not recover in a suit thereon if it appears in evidence at the trial that he had, prior to bringing his action, made a written assignment of the note to another, evidenced by an independent slip of paper. On the contrary, although it was held that Robinson, the plaintiff in that case, was not the holder of the legal title when suit was brought, this court nevertheless sustained a recovery in his favor. Indeed, we might in the present case waive the question whether or not title passed out of Hall and into Mrs. Brake by reason of his written assignment to her, and, conceding that it did, cite the case of *Adams* v. *Robinson* as a precedent for holding that, notwithstanding this fact, Hall was entitled to institute and maintain his action.

It is to be observed that the defendant in this case, while contending that the legal title was in Mrs. Brake and not in Hall, did not undertake to urge, or even suggest, any defense against the former. This being so, and Hall, according to the terms of the instrument and the formal entries thereon, being the ostensible holder, his title to the note could not be inquired into. Civil Code, § 3698; *Atkins & Co.* v. *Cobb*, 56 *Ga.* 88; *Greer* v. *Woolfolk*, 60 *Ga.* 623; *Davis & Bro.* v. *Baker*, 71 *Ga.* 33, 34. This rule evidently proceeds upon the theory that the instrument itself is to be looked to in determining the question of ownership; that the maker will be fully protected in treating the holder and ostensible owner as the party to whom payment is due (if at all), and therefore is not concerned with the question as to who may be equitably entitled to the proceeds, as between such holder and third persons, unless some defense be shown which would be good as against the real party at interest.

3. It appears that this note was transferred to Hall after the day therein appointed for payment, but on the second of the three days of grace allowed by law on such instruments, it being one payable at bank. The question therefore arises,

whether he is to be regarded as having taken the note before maturity. Mr. Parsons says (vol. 1, p. 416): "A note may be negotiated on the second day of grace and the holder will then be protected; but if negotiated on the third, there is a conflict of authority on the question whether the note is dishonored." He adds that he considers the correct rule to be that a note is negotiable even on the last day of grace; and such is the view entertained by Mr. Daniel, also. 1 Dan. Neg. In. § 787 a. See, further, 2 Rand. Com. Paper, § 1037. This rule obtains in New York, Illinois, New Hampshire, Maine and Iowa. See Continental National Bank *v.* Townsend, 87 N. Y. 8; Walter *v.* Kirk, 14 Ill. 55; Cosby *v.* Grant, 36 N. H. 273; Farrell *v.* Lovett, 68 Me. 330; Bosch *v.* Kassing, 64 Iowa, 312. A contrary rule is of force in Massachusetts. Pine *v.* Smith, 11 Gray, 38. That case does not, however, go further than to rule that a transfer on the last day of grace is not to be considered as before maturity, it being conceded that a transfer on the first or second day of grace would clearly be before dishonor. In Fox *v.* Bank, 30 Kan. 441, it was held that a negotiable bill or note endorsed and transferred on the first day of grace was negotiated before maturity. And see Savings Bank of New Haven *v.* Bates, 8 Conn. 505, in which it appeared that the transfer was made on the second day of grace. In the latter case, Bissell, J., said (page 511), in delivering the opinion of the court: "It is too well settled to admit of dispute, that in regard to negotiable notes, the days of grace make a part of the original contract. Such a note, payable by the terms of it in 60 days, is in law a note payable in 63 days. Before the expiration of that time, no demand of payment can be made; and if negotiated on the sixty-first or sixty-second day, it is not negotiated over due."

Thus it will be seen that while there is not unanimity of opinion upon the question whether or not a bill or note on which grace is allowable, negotiated on the last day of grace, is taken subject to existing equities, etc., the entire current of authority is to the effect that the time for payment expressed on the face of such an instrument is not to be regarded as fixing the day upon which the same will become due, but that days

of grace are to be computed in determining the date of its maturity. Were this otherwise, however, we think our statute on the subject (Acts of 1875, p. 92) would be conclusive, and should control our decision; for it was therein provided that "the last day of grace shall be deemed the date of maturity of any bill of exchange, check or promissory note entitled to the three days known as days of grace, for all the purposes of this act." Civil Code, § 3679. Accordingly, we hold that one to whom a negotiable promissory note is transferred on the second day of grace takes the same before maturity, and therefore he will be presumed to have been a bona fide purchaser for value. Whether the same would be true as regards a transfer made on the last day of grace, we are not now called upon to decide.

4. Although apparently a joint principal, the defendant Haug filed a plea in which he set up the defense that his true relation to the note was that of a surety only, and that he had been discharged from all liability thereon, by reason of the fact that his principal had, prior to its transfer to Hall and with full notice to the latter of all the facts, paid off the note in full. In support of this defense, sufficient evidence was introduced at the trial to establish the following facts: Haug really signed the note as surety, and merely for the accommodation of his principal, Whitfield, receiving none of the money and deriving no benefit therefrom. On January 21st, the second day of grace, Whitfield went to the Milledgeville Banking Company, the payee named in the note, paid it in full, and had it endorsed by the bank to his firm, Whitfield & Allen. Subsequently on the same day, the note was endorsed and transferred by Whitfield & Allen to M. W. Hall, or order. This was all done without the knowledge or consent of Haug.

No proof whatever was offered as to the circumstances connected with the transfer of the note to Hall, nor was there any evidence showing that he had any knowledge or even an intimation that the note had been paid, or had any reason to suspect that Whitfield & Allen were not at liberty to negotiate it. Plainly, then, the defense set up by Haug was not made out; for, in the absence of proof showing that Hall had notice of the defendant's true relation to the paper and of the fact that,

notwithstanding it had been paid off in full, it had, without his consent or authority, again been put into circulation, his plea could avail him nothing.

Although Whitfield & Allen may not have occupied the position of a bona fide holder for value, yet if Hall purchased the note from them in perfect good faith, he would be fully protected against the defense interposed by Haug. It can not be questioned that "one may be a bona fide holder, despite bad faith on the part of his endorser." 2 Am. & Eng. Enc. of Law (1st ed.), 390. Nor would the mere fact that Whitfield was a member of the firm having possession of the paper be notice to Hall that it had been paid. Indeed, it has been held that even though the maker himself may be in possession of a note before it has fallen due, this fact will not charge a purchaser with notice that it has been paid off and discharged. Mishler *v.* Reed & Henderson, 76 Pa. 76. And in that case, although it appeared that the note had been discounted at the instance of the maker himself and its proceeds placed to his credit, the plaintiffs were allowed to recover in a suit against one signing as endorser, notwithstanding the latter's agreement with the maker was that the proceeds should be placed in bank to the credit of himself as endorser.

As a general rule, "payment before maturity is at the risk of the party making it, and constitutes no defense against a subsequent bona fide holder for value before maturity." 3 Rand. Com. Paper, § 1470. "Payment can only be made before maturity by consent of both debtor and creditor. And it can only be made with perfect safety at or after the maturity of the instrument, unless the payor receives it in his hands and cancels it; for a payment before maturity is not in the usual course of business; and should the bill or note afterward, and before maturity, reach the hands of a bona fide holder for value, without notice, such holder could enforce a second payment." 2 Dan. Neg. In. § 1233. And to the same effect, see *Paris* v. *Moe,* 60 *Ga.* 90. Thus it will be seen how strictly are the rights of a bona fide purchaser guarded; and rightly so, for otherwise commercial paper could not possibly serve the great beneficial purpose for which it is intended.

If, as we are bound to assume from the record before us, Hall purchased in entire good faith, Haug would have no right—legal, equitable or moral—to claim that he was discharged from liability simply because his principal, *before maturity*, got possession of the note by paying the original payee, and, without express authority from Haug and without his knowledge, again put the paper in circulation. Haug, in the first instance, allowed this paper, a negotiable promissory note, to be floated into the channels of trade, representing to the world that he was a joint principal with Whitfield, bound to make payment at maturity without reference to how many times, or through whom, the note might in the meantime be negotiated. Therefore, as against an innocent holder of the paper, he should not be permitted to urge his secret relation thereto and set up a defense which he could not assert in the capacity in which he executed the paper and in which he held himself out as being bound.

5. Under the facts disclosed by the evidence, a finding for the plaintiff was inevitable. Accordingly, it was proper to direct a verdict in his favor.

*Judgment affirmed. All the Justices concurring.*